DIELECTRIC CORPORATION, Plaintiff-Respondent,

v.

LABOR & INDUSTRY REVIEW COMMISSION, Defendant,

Elaine K. PARYS, Defendant-Appellant.

Court of Appeals

No. 81–2235. Submitted on briefs October 19, 1982.—
Decided January 7, 1983.
(Also reported in 330 N.W.2d 606.)

For the defendant-appellant the cause was submitted on the brief of *Leonard S. Zubrensky* of *Zubrensky, Padden, Graf & Maloney* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *James R. Scott* and *Thomas W. Mackenzie* of *Lindner, Honzik, Marsack, Hayman & Walsh, S.C.* of Milwaukee.

Before Voss, P.J., Brown and Scott, JJ.

VOSS, P.J.   Elaine Parys appeals from a decision of the circuit court for Waukesha county which set aside the order of the Labor and Industry Review Commission.[1] The order of the Labor and Industry Review Commission had affirmed an award to Parys of $2,899.32 for Dielectric's violation of sec. 102.35(3), Stats.[2] The issue presented here is whether Dielectric has shown that it had good cause to terminate Parys, after hiring her, so as not to be in violation of sec. 102.35(3) when it discharged her. After a full review of the record, we conclude that Dielectric did prove that it had good cause to fire Parys and that there was no evidence of bad faith. Because of this, we believe that sec. 102.35(3) has not been violated. Accordingly, we affirm.

Appellant Elaine Parys was hired by respondent Dielectric Corporation in the spring of 1974. In September of 1977, Parys was injured while using a drill press at work, suffering permanent disability to her left hand.

---

[1] Certification of this case was denied by the Wisconsin Supreme Court.

[2] Section 102.35(3), Stats., reads as follows:

Any employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment, where suitable employment is available within the employe's physical and mental limitations, upon order of the department and in addition to other benefits, has exclusive liability to pay to the employe the wages lost during the period of such refusal, not exceeding one year's wages. In determining the availability of suitable employment the continuance in business of the employer shall be considered and any written rules promulgated by the employer with respect to seniority or the provisions of any collective bargaining agreement with respect to seniority shall govern.

Parys was on worker's compensation leave from Dielectric until her return to work on January 3, 1978. Prior to her accident, she had been employed exclusively as a drill press operator. However, upon her return, she was placed in the shipping department, a lower paying position, without a reduction in her previous rate of pay. Parys worked in the shipping department until October 13, 1978, when she was discharged. At that time, James Grieger, who acts as Dielectric's troubleshooter and who is not normally involved in layoffs except in the case of a troublemaker, informed Parys that the reason for her discharge was poor attendance. Grieger testified at trial that Parys' worker's compensation injury, which had occurred over one year earlier, was not a factor in his decision to discharge her.

The record shows that from the time Parys returned to work on January 3, 1978 until she was discharged, there were a number of days she had been absent from work due to various reasons. She had missed five days due to her worker's compensation hand injury, one day for furniture delivery, nineteen days due to bronchial infection or other illness, two days for other unknown reasons, and five days when she was on leave with permission from her supervisor. Thus, Parys missed a total of thirty-two days of work in a nine and one-half month period, not counting time off for vacation.

Dielectric's employment policy contained two separate and distinct provisions specifically pertaining to absenteeism. Non-noticed absences were labeled "unexcused" and were subject to a series of progressive disciplinary stages culminating in termination upon accumulation of seven such absences. Noticed absences were referred to as "excused," although the label pertained only to notice, not to employer forgiveness or approval of a particular absence.

In addition to the policy provisions pertaining to non-noticed absences, the Dielectric employment policy also contained a separate provision pertaining to termination of employees for excessive absenteeism.[3] Under this provision, employees were subject to termination if they missed more than twenty workdays in any calendar year regardless of the "excused" or "unexcused" nature of the absences. The provision did not provide for progressive disciplinary stages short of discharge. Dielectric alleges that it was under this policy provision that Parys was terminated.

Subsequent to her discharge, Parys filed an application with the Department of Industry, Labor and Human Relations, Worker's Compensation Division, on October 17, 1978, alleging that Dielectric had violated sec. 102.35(3), Stats. This statute mandates that the employer rehire an employee who has been injured in the course of employment and who is employable again. Parys contends that she was never truly "rehired" by Dielectric. Instead, she argues that her rehiring was only a *pro forma* rehiring.

The hearing examiner, in his decision dated July 2, 1979, agreed with Parys and awarded her $2,899.32 for the employer's violation of sec. 102.35(3), Stats. Following this decision, Dielectric filed a petition for review. On November 21, 1979, the Labor and Industry Review Commission rendered its decision upholding the award of the examiner. Dielectric then filed suit in the Waukesha county circuit court asking for a reversal of the commission's order. In a decision dated October 23, 1981, the trial court set aside the order of the commission on the grounds that the findings of fact as found by the

---

[3] This provision reads:

*TERMINATION OF EMPLOYMENT*

Unless otherwise specified by Dielectric Corporation, any hourly employee who, after having missed a total of 20 days of work in a calendar year for reason of sickness or injury shall automatically be terminated.

examiner and as affirmed by the Labor and Industry Review Commission did not support the award. More specifically, the trial court held that Parys was "rehired" within the meaning of the term as used in sec. 102.35(3) and that the evidence would support a finding of good faith on the part of the employer. Thus, the court found that Dielectric did not violate sec. 102.35(3) when Parys was later discharged.

Parys argues that the trial court erred when it reversed the commission's award. Parys' basis for this contention is that the trial court should have given deference to the agency's interpretation of this question of law and that the trial court should not have used a bad faith standard to determine whether her rights had been violated. We disagree.

This court does recognize the principle that some deference to the expertise of an agency is appropriate in certain situations. *Pabst v. Department of Taxation*, 19 Wis. 2d 313, 323–24, 120 N.W.2d 77, 82 (1963). However, we do not feel that deference to the agency's expertise is required where the court is as competent as the agency to decide a question of law. *Boynton Cab Co. v. Department of Industry, Labor & Human Relations*, 96 Wis. 2d 396, 405–06, 291 N.W.2d 850, 855 (1980). Our supreme court has also indicated that where the agency decision on an issue of law is based upon a recently passed statute and there is a lack of administrative experience with the statute and there is minimal legislative history, the concept of deference to agency expertise is less compelling. *Village of Whitefish Bay v. Wisconsin Employment Relations Board*, 34 Wis. 2d 432, 444–45, 149 N.W.2d 662, 669 (1967).

In *Board of School Directors of the City of Milwaukee v. Wisconsin Employment Relations Committee*, 42 Wis.

2d 637, 650, 168 N.W.2d 92, 98 (1969), our supreme court held that the construction of a statute is a question of law. In a subsequent case, the supreme court stated that "[q]uestions of law, including the construction, interpretation, or application of a statute, are reviewable *ab initio*." *Boynton,* at 405, 291 N.W.2d at 855. The supreme court has also held that a court is not bound by the interpretation given to a statute by an administrative agency. *City of Milwaukee v. Wisconsin Employment Relations Commission,* 71 Wis. 2d 709, 714, 239 N.W.2d 63, 66 (1976).

■

We feel that because sec. 102.35, Stats., is relatively new and has little, if any, helpful legislative history or case law, this is a situation contemplated by the courts in *Boynton* and *Whitefish Bay* where a reviewing court, that is equally as competent as the agency, need not give deference to the agency's decision. Furthermore, we feel that based on *Milwaukee v. Wisconsin Employment Relations Commission,* the trial court was clearly not bound by the commission's interpretation of sec. 102.35. Therefore, we conclude that the trial court did not commit error when it did not give deference to the commission's interpretation of sec. 102.35.

Parys also contends that the trial court should not have used the bad faith standard to determine whether her rights were violated. Parys argues that the "reasonable manner" standard utilized by the hearing examiner is the appropriate one in a dispute involving sec. 102.35 (3), Stats. We disagree with this proposition also.

The plain language of sec. 102.35 (3), Stats., indicates that this statute is designed to penalize an employer who "without reasonable cause refuses to rehire" an employee who was injured in the course of employment. There is no dispute that Parys suffered such an injury nor that she was rehired by Dielectric. The hearing examiner,

in a decision affirmed by the commission, determined that Dielectric had effectively failed to rehire Parys even though she was fired nine and one-half months after her rehire. The examiner acknowledged the undisputed violation of the twenty day rule and the hardship to operations created by such frequent absenteeism. The examiner, however, concluded that the work rule in question was "not followed in a reasonable manner by the employer" because Parys "was given no warning of any impending layoff prior to October 13, 1978."[4] We hold that the examiner's decision has no basis in the clear language of sec. 102.35(3).

The center of this dispute revolves around the sec. 102.35(3), Stats., phrase "without reasonable cause refuses to rehire." Because this phrase has not yet been interpreted in case law, we believe it is necessary to do so now in order to resolve this case. In interpreting, we will be guided by the general rule that "a statute is to be interpreted, not only by its exact words, but also by its apparent general purpose." *Davis v. State,* 134 Wis. 632, 643, 115 N.W. 150, 155 (1908).

We feel that by enacting sec. 102.35(3), Stats., the legislature mandated rehire unless an employer could demonstrate that reemployment would create a substantial likelihood of reinjury to an employee or injury to co-workers due to the nature of the employee's physical or mental condition. Thus, we interpret "rehire" to mean that the employer must reemploy the injured employee with the intention of continuing to keep this employee on the job. In addition, we conclude that the unreason-

---

[4] We wish to note, however, that the section under which Parys was allegedly fired does not provide for any warnings or any progressive penalties. Instead, it only provides for "automatic" termination.

able refusal to rehire portion of the statute would still be applicable if the employee is rehired only to meet the technical requirements of sec. 102.35(3) and then is discharged.

We interpret sec. 102.35(3), Stats., as creating a new public policy. The practical effect of this statute is that the employment at will doctrine[5] has been modified by this statute. Normally, in an employment at will situation, the burden is on the employee to show bad faith on the part of the employer; under sec. 102.35(3), the burden is shifted to the employer. Under this new statute, once the employee has suffered a worker's compensation injury, the question initially becomes: does the employer have good cause not to rehire. If the employee is rehired, the rehiring cannot be a *pro forma* rehiring. Therefore, if there is an eventual discharge, the employer must show that there is no bad faith on its part to evade this statute and that the rehired employee was discharged with good cause.[6]

---

[5] In *Goff v. Massachusetts Protective Association, Inc.*, 46 Wis. 2d 712, 715–16, 176 N.W.2d 576, 578–79 (1970), the Wisconsin Supreme Court defined the elements of an "at will" employment contract. The court indicated that an employment contract under which the employee gives no additional consideration other than his or her own services and which contains no term clearly specifying otherwise amounts to an indefinite general hiring terminable at the will of either party. Furthermore, the court held that an employee working under such a contract may be discharged for any or even no cause. *Id.* Under these circumstances, the employee has no way to fight the discharge.

[6] This court would also like to make clear that we do not feel the legislature contemplated application of the "reasonable cause" standard to disciplinary decisions. We do not believe that the legislature intended to provide lifetime job protection from "unreasonable" discharges for all employees who sustained a work injury at some juncture in their employment history. Therefore, under this interpretation of sec. 102.35(3), Stats., the utilization

In the present case, we find no evidence in the record which indicates that Dielectric rehired Parys with the intention that it was merely doing so in order to circumvent sec. 102.35(3), Stats. Furthermore, there is nothing in the record to evidence "bad faith" or that the discharge was in some way connected to Parys' injury which had occurred over a year before.[7] On the contrary, there is evidence that the discharge was made pursuant to a preexisting work rule and was premised on an objective numerical criterion completely outside Dielectric's control. Because of this evidence, we conclude that Dielectric did show that it acted in good faith and that Parys was discharged with good cause. Accordingly, we affirm the trial court's decision, holding that Dielectric did not violate sec. 102.35(3) when it discharged Parys.

*By the Court.*—Judgment affirmed.

of the word "rehire" limits the scope of review on employment decisions only to those particular decisions and no others.

[7] On the contrary, Dielectric was more understanding than its own rules required in several instances. At the time of her injury, Parys had been employed as a drill press operator. When she returned to work, Parys was switched to the shipping department to accommodate her physical condition. Although the shipping department position is a lower paying position, she was switched without any reduction in her previous rate of pay.

Another example concerns the number of absences Parys accumulated before being discharged. The employment policy states that after a total of twenty missed days, an employee can be terminated. In this instance, Dielectric let the number of missed days reach thirty-two before discharging Parys. If Dielectric had been looking for a way to fire Parys shortly after "rehiring" her, it is unlikely it would have allowed an additional twelve missed days to accumulate before firing her under the twenty day rule.