GREAT NORTHERN CORPORATION, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Kent W. Nelson, Defendants-Respondents.

GREAT NORTHERN CORPORATION, Plaintiff-Appellant,

v.

LABOR & INDUSTRY REVIEW COMMISSION and Scott R. Randall, Defendants-Respondents.

Court of Appeals

*No. 94–0848. Submitted on briefs October 17, 1994.—Decided November 16, 1994.*

(Also reported in 525 N.W.2d 361.)

On behalf of the plaintiff-appellant Great Northern Corporation, the cause was submitted on the brief of *Charles H. Constantine* of *Constantine, Christensen & Krohn, S.C.* of Racine.

On behalf of the defendant-respondent Labor and Industry Review Commission, the cause was submitted

on the brief of *James E. Doyle,* attorney general, and *Michelle L. Ramirez,* assistant attorney general.

On behalf of the defendant-respondent Scott R. Randall, the cause was submitted on the brief of *Robert T. Ward* of *Schiro & Ward* of Milwaukee.

On behalf of the defendant-respondent Kent W. Nelson, the cause was submitted on the brief of *John A. Becker* of *Becker Law Office* of Racine.

Before Brown, Nettesheim and Snyder, JJ.

BROWN, J. These two cases are consolidated actions involving § 102.35(3), STATS., prohibiting compensable work-related injuries as a basis for discharge. The issue is whether an employer can carry out an attendance policy which includes absences due to work-related injuries as part of the total number of absences allowed before termination. We agree with the Labor Industry and Review Commission (LIRC) that when a work-related injury is used in part as a basis for firing, even when used only as an accumulative tool, the employer runs afoul of the statute.

The facts are straightforward. Both Kent W. Nelson and Scott R. Randall were full-time employees of Great Northern Corporation. Both would have received copies of an attendance policy handbook dictating that an employee receiving nine absence occurrences within a moving twelve-month period will be terminated. The policy set forth certain "necessary absences" that did not count as absence occurrences, but a work-related injury was not one of them. The policy explained the reason for this:

> It should be understood that employee absences due to illness or accidents which happen either at work or outside of work are still regarded as "absence

occurrences." This is done in an effort to recognize those employees who are accident prone or who are frequently ill.

In Nelson's case, he accumulated nine absence occurrences within a twelve-month period. Two of the nine occurrences were due to a work-related injury, including his ninth absence occurrence. Great Northern did not discharge Nelson at that time because of another provision of its policy:

> When the last occurrence would normally result in termination and it is caused by an accident which the employee adequately verifies to management's satisfaction, the company will not discharge the employee but will maintain the occurrence on the employee's attendance record.

When Nelson received another absence occurrence, he was discharged.

Randall also received a reprieve of sorts. The policy handbook states that:

> An employee can also be terminated for receiving three (3) final warnings in a moving eighteen (18) month period. These three final warnings can be a combination of either absence occurrences, unexcused absences, or unexcused tardies.

Randall received three warnings within an eighteen-month period, but because the last warning was associated with a work-related absence, he was not terminated, consistent with the same policy that originally saved Nelson. However, Randall then accumulated nine absence occurrences within a twelve-month period and was discharged.

Both Nelson and Randall complained and won their cases before an administrative law judge. LIRC

adopted the ALJ's decisions, and LIRC in turn was upheld by the circuit court. Great Northern then appealed.

■■

The facts are undisputed. The question is whether, based upon the facts, LIRC correctly applied the statute to the facts of the case. As such, we are dealing with a question of law. *See West Bend Co. v. LIRC,* 149 Wis. 2d 110, 117, 438 N.W.2d 823, 827 (1989). We review questions of law de novo. *See id.* While due weight will be accorded the experience, technical competence and specialized knowledge of LIRC, no special deference is required when this court is as competent as LIRC to decide the legal question involved. *See id.*

Section 102.35(3), STATS., provides in part:

> Any employer who without reasonable cause refuses to rehire an employe who is injured in the course of employment . . . has exclusive liability to pay . . . the wages lost during the period of such refusal, not exceeding one year's wages.

This statute must be liberally construed to effectuate its beneficent purpose of preventing discrimination against employees who have sustained compensable work-related injuries. *West Allis Sch. Dist. v. DILHR,* 116 Wis. 2d 410, 422, 342 N.W.2d 415, 422 (1984). With this axiom in mind, we turn to Great Northern's argument.

Great Northern submits that the statute does not disallow an employer to count work-related injuries as absence occurrences. It asserts that its policy is numerically objective even if it takes into account work-related injuries. It argues that the policy is not in any way pretextual or lacking in good faith. In fact, it points to the record to show that work-related injury

was considered and used to give both complainants a reprieve. It argues that while the policy, by its terms, recognizes injuries at work, it is not designed to penalize those employees. Great Northern maintains that while the two complainants may argue that it was their two work-related injuries which led to their discharge, it was their seven nonwork-related injuries which ultimately led to their discharge.

Great Northern claims support from a decision of this court, *Dielectric Corp. v. LIRC,* 111 Wis. 2d 270, 330 N.W.2d 606 (Ct. App. 1983). In that case, Parys injured her hand while operating a drill press. After several months off work, she was rehired. After more than nine months elapsed, she was discharged for absenteeism. She had been absent a total of thirty-two days in those months, five of which were related to her hand injury. Dielectric terminated her based upon a policy that allowed twenty absences per year. We held that the refusal to rehire was in good faith since the eventual discharge came as a result of the intervening excessive absenteeism. *Id.* at 279, 330 N.W.2d at 610-11.

Great Northern underscores that the facts in *Dielectric* involved an absentee policy that included work-related injury. It points to our language that this policy was "premised on an objective numerical criterion completely outside Dielectric's control." *Id.* at 279, 330 N.W.2d at 611. It also points to our footnote in which we wrote that the legislature did not intend to give lifetime job protection simply because an employee sustained a work injury. *Id.* at 278 n.6, 330 N.W.2d at 610. Great Northern concludes that the *Dielectric* court's reasoning should prevail here.

*Dielectric* is distinguishable from this case, and the distinguishing features also explain why Great North-

ern's arguments must be rejected. In *Dielectric* it was uncontroverted that the reason why Parys was fired was because of an *intervening cause*—the more than twenty unexcused absences which occurred after she went back to work and that had nothing to do with her hand injury. Our supreme court, in a case that approved of our *Dielectric* decision, keyed upon the intervening cause element as the cornerstone of our conclusion that the employer had acted in good faith when it fired Parys. *West Allis Sch. Dist.*, 116 Wis. 2d at 424, 342 N.W.2d at 423. *Dielectric* was not about numerical attendance policies, but about good cause and the lack of bad faith.

Here, however, there is no "intervening cause," unassociated with work-related injury, that resulted in firing the two complainants. They were not fired because of unexcused absences unrelated to work injury. They were fired at least *in part because of* work injury. Clearly, that is contrary to the statute which is to prevent discrimination against employees who have previously sustained injuries.

Perhaps Great Northern's own policy handbook says it best. It candidly justifies its policy on the grounds that Great Northern wanted to "recognize" those employees who are accident prone or who are frequently ill. While there is nothing in the law that prohibits an employer from "recognizing" the accident prone, § 102.35(3), STATS., prohibits an employer from acting upon that recognition by terminating those who had work-related accidents. By using work-related injury as part of the total absences, it *in part* termi-

nated on a basis that the statute is designed to prevent.[1]

*By the Court.*—Judgment and order affirmed.

[1] Our footnote in *Dielectric* remains sound. An employee is not immunized from termination simply because of a prior work-related injury. Government has not usurped the power of employers to fire employees for absenteeism brought on by reasons other than work-related injury.