895 P.2d 257

**Ronald S. PENA, Worker–Appellee,**

v.

**Phelps Dodge Chino MINES, Employer–Appellant.**

**No. 15586.**

Court of Appeals of New Mexico.

April 4, 1995.

Leonard J. Padilla, Albuquerque, for worker-appellee.

Joseph W. Reichert, Arlon L. Stoker, Jr., P.A., Albuquerque, for employer-appellant.

## OPINION

BLACK, Judge.

Employer appeals the compensation order of the Workers' Compensation Judge (WCJ) awarding Worker temporary total disability benefits. Employer raises two issues on appeal: (1) whether the WCJ erred in rejecting Employer's false application defense; and (2) whether the WCJ erred by not apportioning liability for Worker's benefits between Employer and Worker's prior employer. We affirm.

FACTS

■ Because Employer does not challenge the WCJ's findings of fact, we are bound by those findings on appeal. *See Stueber v. Pickard,* 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991) (unchallenged findings are binding on appeal). The WCJ found that Worker suffered a broken navicular bone in a 1988 accident while working for a previous employer, Silver City Welding. The bone apparently did not heal and formed a nonunion. Nevertheless, after a short treatment period, Worker returned to work and contin-

ued to work at various employment over the next four years without being significantly impaired or disabled.

In 1993, while working for Employer, Worker was involved in a work-related accident that reinjured the non-union of the fracture of his right navicular bone. The WCJ found that, although Worker's pre-existing injury was the cause of most of his medical expenses and temporary total disability status, the pre-existing injury was in fact exacerbated by the work-related accident in 1993. The WCJ recognized that, while Silver City Welding may have responsibility for Worker's 1988 injury and thus some of the current medical expenses, Silver City Welding was not a party to this action. Accordingly, the WCJ ordered Employer to pay for Worker's medical expenses and temporary total disability benefits. The WCJ did, however, note that Employer could seek (in other proceedings) a contribution from Silver City Welding on the medical costs.

With regard to Employer's assertion of a false application defense, the WCJ found that "Worker knowingly and willfully concealed information and made false representation[s] as to his medical condition" in both his application for employment and preemployment medical questionnaire. The WCJ also found, however, that the application "did not clearly and conspicuously disclose that the Worker shall be entitled to no future compensation benefits if he knowingly and willfully conceals or makes false representations about the information requested." Therefore, based on NMSA1978, Section 52-1-28.3 (Repl.Pamp.1991), the WCJ ruled that the false application defense was not available to Employer.

FALSE APPLICATION DEFENSE

Both parties agree that the 1991 version of the Workers' Compensation Act, NMSA1978, Sections 52-1-1 to -70 (Repl.Pamp.1991) (the 1991 Act), applies to this case. Section 52-1-28.3 of the 1991 Act is the legislature's codification of what was previously recognized by New Mexico case law as the false application defense. *See Lamay v. Roswell Indep. Sch. Dist.*, 118 N.M. 518, 522, 882 P.2d 559, 563 (Ct.App.1994). Section 52-1-28.3(A) of the 1991 Act provides that, when an employer

asks by written questionnaire about a worker's medical condition, the worker is not entitled to compensation benefits if: (1) the worker conceals information or makes a false representation about his medical condition; (2) the employer did not know about the concealed information or relied on the false representations; (3) reliance was a substantial factor in the initial or continued employment of the worker; and (4) the concealed or falsely represented medical condition substantially contributed to the injury or disability. However, the provisions of Section 52-1-28.3(A) "do not apply unless, in the written questionnaire, the employer clearly and conspicuously discloses that the worker shall be entitled to no future compensation benefits if he knowingly and willfully conceals or makes a false representation about the information requested." Section 52-1-28.3(B).

Employer's employment application and preemployment medical questionnaire contained the following warnings, respectively:

I hereby affirm that the information provided in this employment application is true and complete to the best of my knowledge. I understand that any falsified information, misrepresentations or omissions may disqualify me from further consideration for employment or may result in dismissal if discovered at a later date.

\*     \*     \*     \*     \*     \*

IF EMPLOYED, ANY MISREPRESENTATION OR FALSIFICATION OF THIS RECORD MAY BE CAUSE FOR TERMINATION.

Although Employer urges us to interpret Section 52-1-28.3 in light of what it perceives to be the legislature's intent, "[w]hen the words of the statute are free from ambiguity and doubt, resort should not be undertaken to any other means of interpretation." *State ex rel. Stratton v. Roswell Indep. Sch.*, 111 N.M. 495, 500, 806 P.2d 1085, 1090 (Ct.App.1991). The language of Section 52-1-28.3(B) prohibits an employer from taking advantage of a worker's failure to disclose medical conditions unless "the employer clearly and conspicuously discloses that the worker shall be entitled to no future compensation benefits if he knowingly and

willfully conceals or makes a false representation about the information requested." This limitation seems clear on its face.

■ Employer presents various policy arguments regarding why the warnings contained in its employment application and preemployment medical questionnaire were adequate and why the legislature would consider denial of compensation benefits to be appropriate in this case. Perhaps the legislature would have found these arguments persuasive when it considered Section 52–1–28.3, but "statutory language that is clear and unambiguous must be given effect." *V.P. Clarence Co. v. Colgate,* 115 N.M. 471, 473, 853 P.2d 722, 724 (1993). The statute is explicit and unambiguous in the disclosure required. If the legislature had considered the matter, it may well have determined that a warning of loss of employment or perhaps a warning of possible criminal sanctions would be adequate. For whatever reasons, however, the legislature did not include such alternatives in the statute.

Employer further argues that preclusion of the false application defense in this case produces an "absurd" result. Employer suggests that disability benefits are intended to be a replacement for the wages Worker could have continued to earn with Employer but for his disability. Because the WCJ ruled that Employer is not required to rehire Worker, Employer believes it is absurd to require Employer to pay Worker benefits in compensation for wages he otherwise would not be entitled to earn. Again, Employer is simply arguing policy, and however persuasive one may find this policy argument to be, it is an argument clearly rejected by the statutory language. The legislature has permitted denial of compensation benefits only on very narrow grounds. Moreover, Employer's argument again ignores that Worker still could have been employed elsewhere but for his disability. Viewed in that light, requiring Employer to pay Worker's disability benefits, but not actually rehire Worker, is not absurd.

In a related argument, Employer seems to suggest that the WCJ erred in refusing to invoke a WCJ's inherent equitable power to preclude Worker from receiving benefits.

"[W]orkmen's compensation statutes are sui generis and create rights, remedies and procedures which are exclusive." *Lucero v. Northrip Logging Co.,* 101 N.M. 420, 421, 683 P.2d 1342, 1343 (Ct.App.), *cert. denied,* 101 N.M. 419, 683 P.2d 1341 (1984). By enacting Section 52–1–28.3(B), the legislature obviously considered, and allowed for, the possibility that a worker who engaged in fraudulent conduct may still receive an award of benefits. To allow the WCJ to deny Worker such statutorily authorized benefits under the guise of inherent equitable power would be tantamount to authorizing the WCJ to ignore an express legislative mandate. In short, despite the representations made by Worker, we hold that the WCJ did not err in rejecting Employer's false application defense because Employer failed to comply with the explicit requirements of Section 52–1–28.3(B).

## APPORTIONMENT OF LIABILITY

Employer also challenges the WCJ's decision to hold Employer entirely responsible for Worker's disability. Employer argues that Worker suffered from a pre-existing disability as a result of his accident while working for Silver City Welding. Accordingly, Employer argues that Worker's previous employer should be responsible for that pre-existing disability and that Employer should only be responsible for any additional disability caused by the accident Worker suffered while working for Employer.

■ We begin by noting that it does not appear that Employer properly preserved this issue below. Employer's requested findings of fact and conclusions of law asked the WCJ to find that Worker's entire disability was caused by his prior 1988 accident. Employer's requested findings and conclusions do not raise the apportionment argument that Employer now attempts to raise on appeal. Thus, the issue is not properly preserved for appeal. *See Woolwine v. Furr's, Inc.,* 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court.").

Employer's requested findings and conclusions may, however, have been sufficient to preserve what appears to be Employer's related argument that there is not substantial evidence to hold Employer liable for the full extent of Worker's disability. *See Cockrell v. Cockrell,* 117 N.M. 321, 324, 871 P.2d 977, 980 (1994). However, as we noted above, on appeal Employer has not challenged the WCJ's findings. Thus, those findings are binding on appeal. *Stueber,* 112 N.M. at 491, 816 P.2d at 1113.

The WCJ found that Worker suffered a work-related accident on August 15, 1993, which exacerbated the injury that he previously suffered while working for Silver City Welding. The WCJ further found, to a reasonable medical probability, that as a direct and proximate result of the 1993 accident, Worker suffered an injury to his right wrist that rendered him temporarily totally disabled. Based on those findings, the WCJ was correct in holding Employer liable in the first instance for Worker's medical expenses and disability benefits. *Garcia v. Mora Painting & Decorating,* 112 N.M. 596, 602–04, 817 P.2d 1238, 1244–46 (Ct.App.1991); *Gonzales v. Stanke–Brown & Assocs.,* 98 N.M. 379, 386, 648 P.2d 1192, 1199 (Ct.App. 1982); *cf. McMains v. Aztec Well Serv.,* 119 N.M. 22, 24, 888 P.2d 468, 470 (Ct.App.1994) (medical benefits). Therefore, we need not decide whether Employer can obtain reimbursement from Silver City Welding or any other source in this action.

Based on the foregoing, we affirm the WCJ's compensation order.

**IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.