925 P.2d 1

**Sondra ORTIZ, Worker–Appellant,**

**v.**

**BTU BLOCK & CONCRETE COMPANY, and Mountain States Mutual Casualty Company, Employer/Insurer–Appellees.**

**No. 17047.**

Court of Appeals of New Mexico.

Aug. 21, 1996.

Donald M. Pinnock, Will Ferguson & Associates, Albuquerque, for Worker–Appellant.

Lisa T. Mack, Bradley & McCulloch, P.A., Albuquerque, for Employer/Insurer–Appellees.

*OPINION*

HARTZ, Judge.

(1) Worker appeals from a compensation order entered by the Workers' Compensation Administration (WCA). She contends that the WCA failed to award her the full benefits to which she was entitled for temporary total disability. We agree. We reverse and remand for entry of an amended compensation order.

BACKGROUND

(2) Worker was employed by BTU Block & Concrete Company (Employer) as a truck driver from August 30, 1994 until November 22, 1994. During her employment she was repeatedly reprimanded for failing to obey instructions and for other deficiencies in her job performance. The last straw was an accident on November 18, 1994, when Worker improperly drove a truck and tractor down a ramp. She was fired on November 22. Prior to the firing Worker had made no complaint of injury received in the November 18 accident. But on November 22 she saw a chiropractor, Dr. John C. Christiansen, and subsequently sought workers' compensation benefits.

(3) Mountain States Mutual Casualty Company (Insurer) and Employer have not contested that Worker suffered a compensable injury on November 18, 1994. Insurer paid benefits to January 12, 1995, when Dr. Christiansen released her to return to full duty work. It then resumed payments beginning March 6, 1995, when Dr. Barry Diskant examined her and found that she had not reached maximum medical improvement but could work with restrictions. The dispute on appeal concerns the amount of benefits to which Worker was entitled from January 12, 1995 to March 6, 1995.

(4) Because Worker did not reach maximum medical improvement until June 19, 1995, benefits during the period in question are governed by NMSA 1978, Section 52–1–25.1 (Repl.Pamp.1991) (effective Jan. 1, 1991). The pertinent provisions of that section state:

> A. As used in the Workers' Compensation Act, "temporary total disability" means the inability of the worker, by reason of accidental injury arising out of and in the course of his employment, to perform his duties prior to the date of his maximum medical improvement.
>
> B. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at the worker's pre-injury wage, the worker is not entitled to temporary total disability benefits.
>
> C. If, prior to the date of maximum medical improvement, an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker is disabled and shall receive temporary total disability compensation benefits equal to sixty-six and two-thirds percent of the difference between the worker's pre-injury wage and his post-injury wage.

(5) Employer and Insurer (collectively referred to as Respondents) argued before the WCA that Worker was not entitled to full temporary total disability benefits from January 12 through March 5, 1995 because (1) she had been released to work by Dr. Christiansen, (2) she was capable of modified duty with Employer, and (3) such modified duty would have been available to Worker had she not been terminated for her own misconduct. They proposed a conclusion of law that Worker was entitled to only two-thirds of the difference between her pre-injury wage and the wage she would have been paid for her modified duty. They contended that they owed Worker no money, however, because they had overpaid benefits from March 6 through June 19, 1995.

(6) The WCA found that "[b]ut for Worker's termination for cause from her employment with [Employer], Worker could have returned to work in the modified capacity," and ruled that Worker was not entitled to any additional indemnity benefits.

DISCUSSION

(7) Section 52–1–25.1 recognizes only two exceptions to the requirement that total disability benefits be paid prior to the date of maximum medical improvement if the compensable injury prevents the worker from performing the worker's pre-accident duties. First, if the worker is released to return to work and the employer offers work at the worker's pre-injury wage, then no disability benefits are due. Section 52–1–25.1(B). Second, if the worker is released to work and the employer offers work at less than the worker's pre-injury wage, the worker is entitled to only two-thirds of the difference between the worker's pre-injury wage and the post-injury wage. Section 52–1–25.1(C).

(8) Respondents do not contend that either of these statutory exceptions applies here. An offer of employment is a prerequisite to the applicability of Sections 52–1–25.1(B) and (C). Yet, Employer did not offer Worker employment at any time after she was fired.

(9) Instead, Respondents contend that the Workers' Compensation Act does not cover the specific situation that arose in this case, and therefore principles of "fundamental fairness" must control. For this proposition, they rely on *Paternoster v. La Cuesta Cabinets,* 101 N.M. 773, 776, 689 P.2d 289, 292 (Ct.App.1984). In *Paternoster* the issue before the court was what to do when an employer had overpaid benefits. No statutory provision addressed the issue. We wrote:

> While we normally would look to the [Workers' Compensation] Act for the rights, remedies, and procedures to be applied in any given case, we are provided no direction with regard to the availability of overpayment credit. However, where no guidance is given, "fundamental fairness" must be our guideline.

*Id.* at 776, 689 P.2d at 292 (citation omitted).

(10) We reject Respondents' argument, because in our view the statute does cover the issue before us. It provides for payment of total disability benefits prior to maximum

medical improvement except in two enumerated circumstances. Respondents do not contend that either of those circumstances is present here. Thus, the statute requires payment of full total disability benefits.

(11) We recognize that this Court has noted "the general acceptance of the proposition that one should not be permitted to benefit by refusing to take reasonable steps to help oneself." *Jeffrey v. Hays Plumbing & Heating,* 118 N.M. 60, 64, 878 P.2d 1009, 1013 (Ct.App.1994). One might reason by analogy that a worker should not be entitled to greater benefits simply because she violated instructions so often that she was fired. But the above-quoted proposition is not a free-floating legal rule to be applied whenever a court wishes. It is only an aid in interpreting statutory language. The statute at issue in *Jeffrey,* Section 52–1–26, was ambiguous regarding whether reduction in benefits for partial disability would arise only when the worker was reemployed or whether the reduction would occur simply from an *offer* of reemployment. We resolved the ambiguity by reference to the generally accepted proposition.

(12) The case before us is reminiscent of *Pena v. Phelps Dodge Chino Mines,* 119 N.M. 735, 895 P.2d 257 (Ct.App.1995). In *Pena* the worker had intentionally concealed adverse medical information in his application for employment and his pre-employment medical questionnaire. The employer invoked the false-application defense, *see* NMSA 1978, § 52–1–28.3 (Repl.Pamp.1991) (effective Jan. 1, 1991), as grounds for denying benefits. Section 52–1–28.3(B), however, provided that the false-application defense would not apply "unless, in the written questionnaire, the employer clearly and conspicuously discloses that the worker shall be entitled to no future compensation benefits if he knowingly and willfully conceals or makes a false representation about the information requested." The employment application warned the employee that he could be terminated for misrepresenting medical information, but it did not mention workers' compensation benefits. Despite the employer's policy arguments regarding why the warning in the application should be sufficient to support the false-application defense, we rejected the defense. We wrote:

> The statute is explicit and unambiguous in the disclosure required. If the legislature had considered the matter, it may well have determined that a warning of loss of employment or perhaps a warning of possible criminal sanctions would be adequate. For whatever reasons, however, the legislature did not include such alternatives in the statute.

119 N.M. at 738, 895 P.2d at 260.

(13) Likewise, in Section 52–1–25.1 the legislature could have included additional exceptions to the requirement that full total temporary disability benefits be paid. For example, it could have provided that benefits for temporary total disability would be reduced if the employer had a job available that the worker was capable of performing. *See Safeway Stores v. Owsley,* 91 Or.App. 475, 756 P.2d 48 (1988); *cf. Dielectric Corp. v. Labor & Indus. Review Comm'n,* 111 Wis.2d 270, 330 N.W.2d 606 (App.1983) (statutory penalty for employer who unreasonably refuses to rehire injured employee). But the legislature, for whatever reason, limited the exception to circumstances in which the employer *offers* a job to the worker. It is not enough to say that the legislature would likely have included an exception for the situation before us on this appeal if it had considered the matter. Policy arguments may assist us in understanding statutory language, but they cannot substitute for the legislative text. We find no basis in the language of the Workers' Compensation Act to carve out another exception.

(14) Finally, we address Respondents' reliance on *Aranda v. Mississippi Chem. Corp.,* 93 N.M. 412, 600 P.2d 1202 (Ct.App.), *cert. denied,* 93 N.M. 683, 604 P.2d 821 (1979). The opinion included dictum that " '[i]f an employee, after injury, resumes employment and is fired for misconduct, his impairment playing no part in the discharge, there is no compensable disability.' " *Id.* at 414, 600 P.2d at 1204 (quoting *Vetter v. Alaska Workmen's Compensation Bd.,* 524 P.2d 264, 266 (Alaska 1974)). That, however, is not the situation presented by this appeal; we need not address whether benefits would be due if an employer offered employment to the in-

jured worker, the worker accepted, and the worker was then fired. Also, we do not agree with Respondents' reading of *Aranda* as stating that every worker fired for cause is deemed to have left the work force voluntarily and therefore is not entitled to benefits. A worker's being fired for misconduct may be relevant to whether the worker's injury is the reason the worker has no job, or it may be relevant to whether the worker has, in effect, rejected a job offer. One firing, however, is not dispositive of the issue of whether the worker is willing to be employed. Nor are we convinced that the present Workers' Compensation Act provides benefits only to those still willing to work. Indeed, Respondents' argument based on *Aranda* proves too much. If Worker's firing means that she voluntarily removed herself from the job market and therefore is not entitled to disability benefits, then Worker was not even entitled to disability benefits before she had recovered enough to be capable of working, a result clearly contrary to the Workers' Compensation Act.

(15) We reverse the compensation order and remand for further proceedings consistent with this opinion. The award of attorney's fees should be considered on remand. Worker is awarded her costs on appeal.

(16) **IT IS SO ORDERED.**

ALARID and WECHSLER, JJ., concur.