DeBoer Transportation, Inc.,
Plaintiff-Appellant,

v.

Charles Swenson and
Labor and Industry Review Commission,
Defendants-Respondents.†

Court of Appeals

*No. 2009AP564. Submitted on briefs October 9, 2009.
—Decided March 25, 2010.*

2010 WI App 54

(Also reported in 781 N.W.2d 709.)

† Petition to Review pending.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael J. Lauterbach* of *Nash Podvin, Attorneys at Law, S.C.*, Wisconsin Rapids.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *John R. Jokela* of *John Jokela Law Firm LLC*, Wausau, and *R. Duane Harlow*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Dykman, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. Charles Swenson worked as a truck driver for deBoer Transportation. The question in this case is whether, under WIS. STAT. § 102.35(3),[1] deBoer Transportation illegally refused to rehire Swenson after he recovered from a work-related injury. The Labor and Industry Review Commission concluded that deBoer failed to show "reasonable cause" for its refusal to rehire Swenson, as required by § 102.35(3). We conclude that the commission's reliance on an incorrect interpretation of the reasonable cause standard caused it to err in ruling against deBoer. Accordingly, we reverse the circuit court's order, and remand for dismissal of Swenson's claim against deBoer.

## Background

¶ 2. Swenson was employed by deBoer when he injured his knee at work. After several months away from the job, Swenson's doctor cleared him to return to work. Swenson contacted deBoer and began a reorientation program that deBoer uses for drivers who have been off work for more than sixty days. Swenson cooperated with various requirements, including a physical examination, drug screening, a review of com-

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

pany policies, and a short road test required by the State. However, when deBoer insisted that Swenson complete an overnight "check-ride," the reorientation came to a halt.

¶ 3. DeBoer's "check-ride" requires a returning driver to be away from his or her home for a few days or longer so that another deBoer driver can evaluate driving skills.[2] Prior to his injury, Swenson drove a daily route for deBoer that allowed him to be home during part of every day to provide care for his terminally ill father. If Swenson participated in the overnight check-ride, he would have needed to locate and personally pay for a care provider for part of each day that he was away on the check-ride.

¶ 4. Swenson asked deBoer if he could complete his check-ride "locally" so that it would not interfere with his daily routine of caring for his father. Alternatively, Swenson told deBoer that, if the company would pay the additional cost of caring for his father during the overnight check-ride, Swenson would complete the ride. Because deBoer refused to consider making alternative check-ride arrangements or to pay for additional care for Swenson's father, Swenson refused to cooperate with the check-ride and was not rehired.

¶ 5. The commission accepted as true the testimony of deBoer employees that deBoer had never before made an exception to the check-ride policy. It is unclear how long deBoer's overnight check-ride policy

---

[2] The commission did not resolve a factual dispute as to how long deBoer was going to require that Swenson be away from home for his check-ride. DeBoer presented testimony supporting a finding that Swenson was told it would likely be less than five days. Swenson testified that he was told he would have to be on the road for two or three weeks.

had been in place, but there is no evidence that Swenson was treated differently than other returning drivers.

¶ 6.   The commission seemingly accepted deBoer's assertion that the purpose of the check-ride was to ensure that it employed safe drivers and that the policy was reasonable on its face. DeBoer did not, however, attempt to prove that applying the policy in Swenson's particular case was necessary to ensure safety, that it could not tailor a check-ride for Swenson that would permit him to personally provide daily care for his father, or that accommodating Swenson's situation with his father would be a financial burden.

¶ 7.   The commission focused on whether it was reasonable for deBoer to fail to accommodate Swenson's request. The commission concluded that deBoer did not demonstrate that accommodating Swenson would have compromised safety or been a financial burden and, therefore, deBoer failed to show reasonable cause for its refusal to rehire. The circuit court upheld the commission's decision, and deBoer appealed.

### Discussion

¶ 8.   The pertinent statute in this case, WIS. STAT. § 102.35(3), provides:

> Any employer who *without reasonable cause refuses to rehire* an employee who is injured in the course of employment, where suitable employment is available within the employee's physical and mental limitations, . . . has exclusive liability to pay to the employee the wages lost during the period of such refusal, not exceeding one year's wages.

(Emphasis added.) The parties do not dispute that Swenson was injured in the course of employment or

that deBoer "refuse[d] to rehire" Swenson within the meaning of the statute. The dispute is over whether that refusal was based on "reasonable cause."

¶ 9.   The case law sets forth a shifting burden of proof. First, the employee must show that he or she "has been injured in the course of employment and subsequently is denied rehire." *West Bend Co. v. LIRC*, 149 Wis. 2d 110, 123, 438 N.W.2d 823 (1989). If an employee makes this prima facie showing, the burden shifts to the employer to show "reasonable cause" for its refusal to rehire. *Id.* This burden may be met with proof of a valid business reason for its action. *Ray Hutson Chevrolet, Inc. v. LIRC*, 186 Wis. 2d 118, 123, 519 N.W.2d 713 (Ct. App. 1994).

¶ 10.   Whether the facts as found by the commission give rise to reasonable cause is a question of law. *Id.* at 122. The parties dispute what level of deference we should apply to the commission's application of the reasonable cause standard. We conclude for the reasons explained below, however, that the commission's application of the standard has no reasonable basis in the law or the facts of this case. Accordingly, the level of deference we apply to the commission's decision does not matter. An unreasonable application of a statutory standard will not be upheld under any level of deference. *See DOR v. A. Gagliano Co.*, 2005 WI App 170, ¶ 23 n.7, 284 Wis. 2d 741, 702 N.W.2d 834 ("[C]ourts will not uphold an unreasonable agency interpretation of a statute, regardless of the level of deference applied . . . .").

¶ 11.   We begin with a summary of the commission's decision. The commission determined that, although deBoer's check-ride policy had a safety purpose, was of long standing, and was uniformly enforced,

491

deBoer nonetheless failed to show reasonable cause because deBoer did not demonstrate that accommodating Swenson by deviating from its check-ride policy would have compromised safety or would have been a financial burden. Consistent with this reasoning, the commission argues on appeal that it is not enough for deBoer to show that it refused to rehire Swenson by uniformly applying its check-ride policy, which the commission acknowledges "may have some legitimate business purpose behind it." According to the commission, deBoer also needed to present evidence that persuaded the commission that it would have been an unreasonable burden to accommodate Swenson's non-work, non-injury-related request.[3]

¶ 12.    DeBoer argues that this reasoning amounts to an incorrect interpretation of the statute because it requires something more than reasonable cause. We agree.

¶ 13.    As noted above, there is no evidence that deBoer singled out Swenson in applying its check-ride policy. In addition, it is undisputed that deBoer's long-standing practice was based on deBoer's belief that the check-ride is a means of ensuring safe driving and that,

_____

[3] If part of the commission's decision is considered in isolation, it might be read as containing a conclusion about the reasonableness of deBoer's check-ride policy that is distinct from the commission's consideration of the reason Swenson requested an accommodation. However, when the commission's decision is considered as a whole, it is readily apparent that the commission considered the reasonableness of deBoer's refusal to deviate from its check-ride policy in light of what it considered to be the legitimate need Swenson had to provide care for his father.

492

as a general matter, having safe drivers is a legitimate business concern for deBoer. And, there is no evidence that deBoer's refusal to accommodate Swenson had anything to do with Swenson's injury. To the contrary, the evidence discloses that deBoer was in the process of rehiring Swenson and had taken several steps toward that end. So far as the evidence shows, the only reason Swenson was not rehired was because he did not participate in the check-ride. When deBoer declined to accommodate Swenson by tailoring a check-ride to meet Swenson's needs or by paying Swenson's additional care expenses, and when Swenson refused to incur the expense of paying for care for his father while he was away on the check-ride, the result was that Swenson was not rehired.

■

¶ 14.   We conclude that the reasonable cause standard in WIS. STAT. § 102.35(3) does not contemplate requiring employers to either deviate from a facially reasonable and uniformly applied policy, or explain why it would be burdensome to do so, when a returning employee requests the deviation to accommodate a non-work and non-injury-related personal need. The policy here was facially reasonable because the policy furthers deBoer's interest in employing safe drivers. To hold otherwise would place an unreasonable burden on employers. *See Dielectric Corp. v. LIRC*, 111 Wis. 2d 270, 274, 279, 330 N.W.2d 606 (Ct. App. 1983) (employer did not violate § 102.35(3) when discharging injured employee pursuant to an absenteeism policy premised on objective criteria). We also observe that at least one pertinent case suggests that the commission and courts should not second-guess facially reasonable business decisions, at least not in the absence of evidence that an employer's refusal to rehire was because of the

employee's injury. *See Ray Hutson*, 186 Wis. 2d at 123 (decision to eliminate injured employee's position in order to reduce costs was sufficient to establish reasonable cause, and commission erred by requiring employer to show some actual gain in efficiency).

¶ 15. Moreover, it is not reasonable to suppose that the legislature intended to impose on employers the burden of judging which non-work, non-injury-related requests need to be accommodated if reasonably possible. What if Swenson's accommodation request was based on his desire to continue daily volunteer work at a home for the elderly? What about a request based on his desire not to miss classes that he had paid for to enrich his life, such as woodworking or dance classes? We do not think the legislature intended to require employers to assess which non-work, non-injury-related requests merit accommodations and which do not.

■

¶ 16. It may be true, as the commission asserts, that deBoer could have met its safety concerns by requiring a less demanding check-ride tailored specifically to Swenson. But that does not mean that requiring Swenson to cooperate with deBoer's normal check-ride was unreasonable. Indeed, the only reason Swenson gave for not cooperating with a multiple-overnight check-ride was because the policy interfered with a non-work, non-injury-related issue in Swenson's life. Having concluded that deBoer was not obligated to accommodate the care needs of Swenson's father, there remains no basis for concluding that deBoer acted unreasonably in requiring that Swenson comply with its normal check-ride. It is unreasonable to interpret the "reasonable cause" standard in Wis. Stat. § 102.35(3) as requiring employers to precisely tailor reorientation programs to the anticipated assignment of a returning employee.

494

¶ 17.　Accordingly, we conclude that the commission erred by determining that deBoer failed to show reasonable cause. Reasonable cause is shown here by deBoer's uniform application of its longstanding safety testing procedure to Swenson, combined with the absence of evidence supporting an inference that deBoer refused to rehire Swenson because of his injury. Stated differently, under the facts in this case, there is no basis for the conclusion that deBoer did not have reasonable cause to require Swenson to participate in the checkride and, therefore, no basis for the conclusion that "reasonable cause" was lacking.

¶ 18.　We stress that our decision should not be read as holding that the commission must accept as reasonable all longstanding uniformly applied policies that are facially reasonable. There may be circumstances in which the application of a facially reasonable business practice, even one of long standing, to a returning employee does not constitute "reasonable cause." For example, in some instances the connection between a proffered facially valid business reason and the demand on the employee may be too tenuous to supply reasonable cause. Just as the legislature could not have intended to impose on employers the burden of judging which non-work, non-injury-related requests need to be accommodated if reasonably possible, the legislature could not have intended to give employers free rein to impose any burden on returning employees, so long as that burden is facially related to a valid business purpose.

¶ 19.　Up to this point, we have focused our attention on whether the commission applied an incorrect reasonable cause standard. We now address the portion of the commission's decision that declared deBoer's proffered reason for not rehiring Swenson a pretext for

495

discrimination. The law is unclear on whether the question of pretext is subsumed in the reasonable cause analysis or whether, instead, pretext is a separate issue that is addressed only after an employer establishes reasonable cause. *See Ray Hutson*, 186 Wis. 2d at 123–24. We need not resolve this lack of clarity here, however, because the commission's pretext analysis adds nothing to its reasonable cause analysis. The commission's sole reason for finding that deBoer's check-ride requirement was a pretext was deBoer's failure to present evidence that it would have been an unreasonable burden to accommodate Swenson in providing care for his father.[4]

## *Conclusion*

¶ 20. In sum, because the commission's decision depended on an incorrect interpretation of the reasonable cause standard in WIS. STAT. § 102.35(3), we reverse the circuit court's order confirming the commission's decision and remand for dismissal of Swenson's claim against deBoer.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 21. DYKMAN, P.J. (*dissenting*). The majority opinion starts off well, explaining that this is an administrative review dependent on the meaning of WIS. STAT.

---

[4] The majority chooses not to spend time responding to specifics in the dissenting opinion. At the same time, we caution that, in several respects, the dissent misreads the majority opinion, attributing to it reasoning and conclusions that it does not contain. Accordingly, readers should look to the source for our analysis and conclusions, and not to the dissent's characterizations of them.

§ 102.35(3) (2007–08).[1] It quotes the statute. But the train runs off the track at ¶ 13, when the majority uses deBoer's uniform and long-standing practice to interpret "reasonable cause" under the statute. It is not surprising then that, having used an incorrect analysis, the majority reaches the wrong conclusion.

¶ 22.   The correct analysis focuses on the plain language of the statute. WISCONSIN STAT. § 102.35(3) reads:

> Any employer who without reasonable cause refuses to rehire an employee who is injured in the course of employment, where suitable employment is available within the employee's physical and mental limitations, upon order of the department and in addition to other benefits, has exclusive liability to pay to the employee the wages lost during the period of such refusal, not exceeding one year's wages. In determining the availability of suitable employment the continuance in business of the employer shall be considered and any written rules promulgated by the employer with respect to seniority or the provisions of any collective bargaining agreement with respect to seniority shall govern.

The statute says nothing about long-standing and uniform practices. It says nothing about what an employee must say or do to be rehired. Instead, § 102.35(3) focuses only on an employer's duty to rehire an injured employee.

¶ 23.   We are not interpreting this statute for the first time. The supreme court explained what WIS. STAT. § 102.35(3) was all about in *West Allis School District v. DILHR*, 116 Wis. 2d 410, 422–23, 342 N.W.2d 415 (1984):

---

[1] All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Hence, in accord with long accepted traditional approaches to workers compensation statutes, sec. 102.35(3) must be liberally construed to afford the aggrieved worker additional compensation.

. . . .

Also, as stated above, sec. 102.35(3), Stats., as a part of the workers compensation act, must be liberally construed to effect as fully as possible the beneficent objectives of the workers compensation act. It was well settled at the time of the enactment of sec. 102.35(3) that the compensatory aspects of ch. 102 were to be liberally construed.

. . . .

It is clear from the plain words of the statute that its purpose is to prevent discrimination against employees who have previously sustained injuries and to see to it, if there are positions available and the injured employee can do the work, that the injured person goes back to work with his former employer. This fundamental purpose, and the objective of worker protection explicit in the workers compensation act, makes the construction urged by the school district inappropriate . . . . [I]t would defeat the clear legislative purpose of providing compensation to the employee of not more than a year's wages should the refusal to rehire be found unreasonable.

¶ 24. We have explained that WIS. STAT. § 102.35(3) puts the burden of showing a reasonable refusal to rehire on the employer. *Dielectric Corp. v. LIRC*, 111 Wis. 2d 270, 278, 330 N.W.2d 606 (Ct. App. 1983).

¶ 25. I am not sure why the majority has concluded that LIRC's conclusion was unreasonable, but I am sure what it has not done: it has not interpreted

498

Wɪs. Sᴛᴀᴛ. § 102.35(3) in the way the supreme court and the court of appeals have told us we must. The statute is short, unambiguous, and to the point. It nowhere suggests that extraneous matters that the majority considers important, such as a long-standing and uniformly enforced rule, an ailing father or woodworking and dance classes are relevant to whether an employer's test for rehire is reasonable. These factors are important only to the majority. It is apparent to me that before refusing to rehire an injured employee, the employer must determine only whether it has reasonable cause to refuse to rehire. Or, put in terms of standard of review, we examine whether LIRC properly found that the employer's decision not to rehire was or was not reasonable. That is the beginning and the end.

¶ 26.  The majority writes that "[t]he commission seemingly accepted deBoer's assertion that the purpose of the check-ride was to ensure that it employed safe drivers and that the policy was reasonable on its face." Majority, ¶ 6. Where does that come from? What LIRC really wrote was that deBoer

> did not credibly explain how the applicant's fitness to resume over-the-road driving could only have been evaluated by an overnight road trip. If it was the night driving the employer was concerned about, it could have required the applicant to have gone out with an observer on a night driving trip, with a return home the following morning. This would have been precisely the type of route the applicant had driven in his pre-injury employment. The employer's unyielding insistence that there be an extended overnight trip was unexplained and unreasonable.

LIRC Decision, ¶ 1.

¶ 27.  The second paragraph of LIRC's decision, and the Administrative Law Judge's lengthy decision,

which LIRC adopted, can be reduced to this: "DeBoer unreasonably refused to accommodate Swenson's reasonable request for an alternative test ride which would allow him to attend to his ailing father." While I agree with this conclusion, it is not necessary to go there. WISCONSIN STAT. § 102.35(3) says nothing about accommodating an injured employee's request for accommodation. Adding accommodation to a clear statutory mandate complicates and confuses the real issue. The majority's focus on this will o' the wisp is a classic example of an analysis led astray by a red herring.

¶ 28. The only relevant question is whether LIRC erred in finding that deBoer did not have reasonable cause to refuse to rehire Swenson because Swenson did not perform a several-day road trip. LIRC found that this was unnecessary to establish his fitness to perform the type of employment he held before his injury.

¶ 29. We do not review LIRC's answer to this question de novo. We recently said that we afford LIRC great weight deference in interpreting worker's compensation statutes "[b]ased on the [c]ommission's duty to administer the worker's compensation statutes, its longstanding interpretation of these statutes, its expertise, and the benefit of consistent decisions." *McRae v. Porta Painting, Inc.*, 2009 WI App 89, ¶ 7, 320 Wis. 2d 178, 769 N.W.2d 74. We also explained that "[u]nder the great weight deference standard of review we will uphold the [c]ommission's interpretation and application of the statute to the facts found unless the interpretation is unreasonable," and that "[a]n unreasonable interpretation of a statute is one that directly contravenes the words of the statute, is clearly contrary to legislative intent, or is otherwise without rational basis." *Id.*, ¶ 21 (citation omitted). The majority appears

to choose Number 3, but fails to explain why the part of LIRC's decision I have quoted is irrational.[2]

¶ 30. The majority concludes that because the employer's "check-ride" policy was of long standing and uniformly enforced, and had some relation to safety, the application of this policy to Swenson must be reasonable.[3] There is nothing magical about a long-standing but arbitrary policy. A uniformly enforced capricious policy does not somehow become reasonable. Suggest-

[2] Even looking at this case without the guidance of *West Allis School District v. DILHR*, 116 Wis. 2d 410, 342 N.W.2d 415 (1984), and *McRae v. Porta Painting, Inc.*, 2009 WI App 89, 320 Wis. 2d 178, 769 N.W.2d 74, the majority's conclusion that LIRC's decision is unreasonable is tenuous. "Reasonableness" has a history. We do not review a court's decision as to the reasonableness of some act de novo. *Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357 (1983), identified reasonableness as a question of law, though, because that conclusion was intertwined with factual findings supporting the conclusion, stated that an appellate court should give weight to the trial court's decision. The *Wassenaar* standard has been imported into administrative reviews. *West Bend Education Ass'n v. WERC*, 121 Wis. 2d 1, 12, 357 N.W.2d 534 (1984), reads: "Where a legal question is intertwined with factual determinations or . . . where the agency's interpretation and application of the law is of long standing, a court should defer to the agency which has primary responsibility for determination of fact and policy." (Footnote omitted.)

[3] DeBoer might also have a long-standing and uniformly enforced policy requiring its janitors to take a check-ride or to attend three supreme court oral arguments as a condition of re-employment after an injury. But that would not require LIRC to find that these long-standing and uniformly enforced requirements were reasonable. The focus of our review should be on the rationality of LIRC's reasoning as to the reasonableness of the conditions for re-employment as applied to each returning employee. We should defer to LIRC's decisions on this issue.

ing that some uniformly enforced, long-standing governmental and commercial policies about race, gender and ethnicity must be reasonable because they were or are long standing and uniformly enforced is easily recognized as bogus.

¶ 31. So that leaves us with safety. Facially, who could disagree that upholding safety requirements for truck drivers is reasonable? But even safety involves a cost-benefit analysis. Cloverleaf intersections are not required for every intersection of every road. That is where reasonableness enters the picture. LIRC makes decisions about reasonableness every time it hears a case under Wis. Stat. § 102.35(3). That is always a legal conclusion intertwined with facts. It is probably no coincidence that this is also the definition of the "great weight" or highest standard of deference we use when reviewing administrative decisions. *See Clean Wisconsin, Inc. v. PSC*, 2005 WI 93, ¶ 41, 282 Wis. 2d 250, 700 N.W.2d 768. So, for me, the question is whether I should defer to LIRC's conclusion intertwined with facts that the employer's refusal to rehire Swenson was not reasonable. I do not believe that whether an employer's policy is long standing or uniformly enforced should have anything to do with the majority's or my decision.

¶ 32. The majority concedes that if the first paragraph of LIRC's decision is considered without considering LIRC's paragraph two and the ALJ's decision, Swenson might prevail because LIRC found deBoer's check-ride policy unreasonable as to Swenson. Majority, ¶ 11 n.3. By turning LIRC's two paragraphs into one, the majority avoids a necessary inquiry. What would the majority do if all LIRC wrote was the first paragraph of its decision? The majority isn't saying. I conclude that had LIRC done so, the court of appeals would have issued a per curiam decision or summary order affirm-

ing the trial court and LIRC. Thus, the majority is really telling us that LIRC's second paragraph and the ALJ's decision are poison pills which doom anything else LIRC has found or concluded. I conclude that the second paragraph of LIRC's decision together with the ALJ's decision are unnecessary to our analysis, under whatever standard of review we might use.[4] I am not willing to accept that we are to scour administrative

[4] Paragraph two of LIRC's decision reads:

> The simple accommodation the applicant requested for the testing process was reasonable, and it would not have jeopardized any of the employer's safety concerns. The applicant merely asked for an alternative schedule so that he could care for his terminally ill father, but the employer gave no explanation for failing to even consider this request. As noted by the administrative law judge, the employer had the burden of demonstrating reasonable cause for discharging the applicant, but failed to carry that burden. The employer's safety director refused to discuss any possible accommodation with the applicant, resulting in what constituted a discharge. The courts have regularly held that the statute must be liberally construed to effectuate its beneficent purpose of preventing discrimination against injured employees. The employer's actions evinced an unreasonable disregard for the applicant's circumstances, leading to the credible inference that the work injury did play a part in the discharge. The employer violated both the spirit and the letter of the law set forth in WIS. STAT. § 102.35(3).

While I have concluded that paragraph two of LIRC's decision is unnecessary, I do not agree with the majority's decision even if I consider paragraph two. The ultimate question is whether deBoer's refusal to rehire Swenson was unreasonable. Reasonableness is a large enough umbrella to cover deBoer's response to Swenson's request for accommodation. The majority tells us that any non-work, non-injury request for accommodation to an employer's long-standing and uniformly enforced rehire policy makes an employer's decision to refuse to rehire the employee reasonable. That conclusion ignores the plain meaning of WIS. STAT. § 102.35(3).

decisions for any error we can find, and having found one, blow up the whole decision even though we would affirm the agency based on the balance of its decision. I cannot agree with this new concept.

¶ 33.    We grant trial courts far more deference than the majority gives LIRC under situations similar to this one. Administrative agencies and trial courts both exercise discretion. "[I]f the trial court's exercise of discretion demonstrates consideration of improper facts or a mistaken view of the law, the reviewing court need not reverse if it can conclude ab initio that facts of record applied to the proper legal standard support the trial court's conclusion." *State v. Pittman,* 174 Wis. 2d 255, 268–69, 496 N.W.2d 74 (1993). Why cannot we do the same for LIRC's determination that deBoer's reason for not re-hiring Swenson was unreasonable? If LIRC's comments about Swenson's ailing father show that it considered improper facts or that it held a mistaken view that the statute permitted or required consider- ation of Swenson's father's illness, why cannot we do as we do for trial courts:    ignore the improper facts and apply the relevant facts found by LIRC to the statute? We can, and if we do, we would affirm.[5] The majority has turned standard of review on its head. Instead of

_____

[5] LIRC has not had the opportunity to consider this dispute between LIRC and Swenson under the interpretation the ma- jority gives to WIS. STAT. § 102.35(3). That interpretation makes significant changes in the analysis parties and LIRC have used to determine eligibility in refusal to rehire cases. At the very least, we should reverse and remand with instructions to remand to LIRC for consideration of deBoer's liability under the majority's new analysis. A reviewing court would then know whether LIRC would come to a different conclusion under the interpretation of § 102.35(3) that the majority has promulgated today.

searching for reasons to affirm LIRC, the majority has searched for reasons to reverse.

¶ 34.  I will give great weight to LIRC's decision. While safety is important for truck drivers, there is a disconnect between requiring Swenson to spend several days of overnight over-the-road driving when all that Swenson had done and would do if rehired would be day trips with single overnight stays. Swenson did a day trip for his employer, apparently with no problems. LIRC was entitled to believe that no useful purpose would be served by requiring Swenson to take an extended overnight trip when his future employment would have nothing to do with that type of driving and therefore deBoer's insistence on a multi-day, overnight check-ride as a condition of employment was unreasonable. I have explained why I do not join in the majority's decision. Therefore, the best I can do is respectfully dissent.