1997-NMCA-127

952 P.2d 20

Linda BUCKINGHAM, Worker–Appellee,

v.

**HEALTH SOUTH REHABILITATION HOSPITAL, and CIGNA Insurance Company, Employer/Insurer–Appellants.**

No. 17305.

Court of Appeals of New Mexico.

Nov. 18, 1997.

**420**

Janet M. Velazquez, Albuquerque, for Appellee.

David N. Whitham, Emily A. Franke, Butt, Thornton & Baehr, P.C., Albuquerque, for Appellants.

*OPINION*

HARTZ, Chief Judge.

(1) Appellants Health South Rehabilitation Hospital (Employer) and CIGNA Insurance Company (Insurer) appeal a decision of the Workers' Compensation Judge (WCJ) awarding attorney's fees to Worker. They contend that the Workers' Compensation Act bars the award even if the efforts of Worker's attorney benefitted Worker. Because we agree that the WCJ based the award on improper considerations, we reverse the award. An attorney's fee award may, however, be appropriate. Therefore, we remand for further proceedings. With respect to the attorney's efforts to obtain medical benefits, the panel is divided on the standard for awarding a fee. On that matter this opinion represents a dissenting view.

## I. BACKGROUND

(2) Worker suffered an occupational injury to her knee on September 9, 1992. She became unable to perform her job duties on December 12, 1994, following two surgeries on her knee. By the time she filed her complaint with the Workers' Compensation Administration (WCA) on June 14, 1995, her knee had been operated on four times. Her complaint contended that she needed a total knee replacement but that Appellants had refused to pay for reasonable and necessary surgery. According to the complaint, such surgery was "one of two alternatives at this point in time, and the alternative of choice for myself."

(3) Appellants' response to the claim, filed on July 21, 1995, stated:

[1.] The Employer has provided adequate medical care.

[2.] There would appear to be a pending issue of what constitutes reasonable and necessary care.

[3.] Employer / Insurer have not been contacted by the authorized treating physicians for the purpose of securing authorization for the surgical procedure which Worker desires.

[4.] There is a dispute between Worker and her authorized treating physician and his referrals regarding the type of surgical proceedure [sic] which should be performed and it is likely that the physicians should be allowed to address this in detail through depositions. The physicians believe that a knee arthrodesis (fusion) should be performed. Worker wants a knee arthroplasty (replacement joint).

[5.] A psychological profile has determined that worker is not a good surgical candidate.

[6.] Worker has had a difficult time recovering from surgery previously performed in the course of treatment of the injured knee and this may impact future surgeries.

(4) After a mediation conference on July 27 the mediator recommended:

Dr. [Samuel] Tabet shall be contacted jointly by the parties to discuss the feasibility of knee replacement for Worker. If Dr. Tabet agrees that the knee replacement is reasonable and necessary under the circumstances, and agrees to perform the surgery, Employer/Insurer shall pay for the surgery[.]

Dr. Tabet was deposed by the parties on August 29. Early in his deposition he announced that, contrary to his previous position, total knee replacement for Worker would be appropriate. He explained that he changed his mind after deciding that her

knee was not infected and conferring with his colleagues. Both parties accepted the recommended resolution and on December 1 the clerk of the WCA filed a Notice of Completion, stating that the issues had been resolved by the parties.

(5) On February 5, 1996 Worker's attorney petitioned the WCA for an attorney's fee. The petition requested a fee of $4000, plus tax and costs. The affidavit in support of the petition contained a statement listing services for 23.9 hours. The affidavit stated that the attorney's work related to two matters. One was the knee surgery. The other was Appellants' failure to pay disability benefits in the amount of $3963.04 until the attorney made four demands. Worker never filed a complaint with the WCA regarding nonpayment of disability benefits, and there had been no proceedings before the WCA with respect to that matter.

(6) The WCJ awarded attorney's fees of $4000 plus tax and costs, with Worker to pay half the fee and Appellants the other half. The WCJ's findings noted that Appellants had made no offer of settlement more than four days before the mediation conference and:

6. The fundamental dispute was whether Worker should receive a knee arthroplasty as a reasonable and necessary medical procedure.

7. The present value of Counsel's recovery in the Worker's favor is $28,963.00. This is calculated based on the following figures:

   Medicals for the arthro-  $25,000.00
   plasty
   Past weekly benefits      $ 3,963.04

8. Judicial notice is taken of the chilling effect of miserly attorney fees on representation.

9. Worker's Counsel reasonably and necessarily expended 23.9 hours of effort in this case.

10. Worker's Counsel's regular hourly billing rate is $140.00 per hour.

11. The issues in this cause were contested to an average degree.

12. The issues in this cause were of average complexity.

13. The issues in this cause were of average novelty.

14. Worker's Counsel has been in practice in New Mexico for 15 years.

15. Counsel's ability, skill[,] experience, and reputation are excellent.

16. Worker was relatively successful in this cause.

Although the WCJ made no finding on the point, it is undisputed that the knee replacement surgery had not been performed prior to the date of the court's order.

## II. THE ATTORNEY'S FEE AWARD IN THIS CASE.

### A. Past–Due Disability Benefits.

■ (7) We now turn to the award of attorney's fees in this case. First, we consider the propriety of awarding attorney's fees for obtaining past-due disability benefits for Worker.

■ (8) NMSA 1978, Section 52–1–54(E) (Repl.Pamp.1991) (effective Jan. 1, 1991), states:

In all cases where compensation to which any person is entitled under the provisions of the Workers' Compensation Act is refused and the claimant thereafter collects compensation *through proceedings before the workers' compensation administration* or courts in an amount in excess of the amount offered in writing by an employer five business days or more prior to the informal hearing before the administration, then the compensation to be paid the attorney for the claimant shall be fixed by the workers' compensation judge hearing the claim[.]

(Emphasis added.) An award under this subsection is authorized only when the worker obtains benefits through proceedings before the WCA or a court. Moreover, even when a claim is filed with the WCA, no attorney's fee is authorized if the employer makes an offer more than four business days prior to the informal hearing and the offer equals or exceeds the amount ultimately obtained by the worker through WCA proceedings. *A fortiori,* the subsection does not authorize an attorney's fee award if the employer meets the worker's demand before a

claim is even filed with the WCA. Thus, if the worker's attorney does an outstanding job of putting together a factual and legal argument that persuades the employer to satisfy the worker, the attorney receives no fee. Although this result may seem obtuse, it is the clear import of the statutory language; and the provision may be justified on the ground that it encourages responsible behavior by the employer.

(9) On the other hand, Section 52–1–54(C) authorizes the award of an attorney's fee when the jurisdiction of the WCA "is invoked to approve a settlement of a compensation claim." At oral argument in this case, Worker's attorney indicated that in situations such as what occurred here with respect to disability benefits, the attorney for the worker simply files a claim for attorney's fees with the WCA, presumably pursuant to Section 52–1–54(C). She argues for affirmance of the fee award on this alternative ground. But this alternative was not raised in the briefs on appeal, and we cannot determine from the record before us whether she complied with WCA rules and procedures in requesting a fee on this ground or whether this ground was relied upon by the WCJ. In this circumstance, the matter is best left to the WCJ in the first instance. We therefore reverse the award of attorney's fees for efforts in obtaining disability benefits and remand for the WCJ to decide whether an attorney's fee award is appropriate under Section 52–1–54(C) and, if so, the size of the award.

## B. Medical Benefits.

(10) Section 52–1–54(H) governs attorney's fees for recovery of future medical benefits. It states:

In determining reasonable attorneys' fees for a claimant, the workers' compensation judge shall consider only those benefits to the worker that the attorney is responsible for securing. The value of future medical benefits shall not be considered in determining attorneys' fees.

Worker's attorney obtained Appellants' agreement to pay for surgery to be performed in the future. This benefit is a "future medical benefit." The WCJ clearly considered the value of the future surgery in awarding an attorney's fee. Therefore, that component of the fee award must also be set aside.

(11) Thus far, this opinion represents the unanimous view of the panel. The panel is divided, however, on what may be done on remand with respect to a fee award for the attorney's efforts to obtain future medical benefits. The remainder of this section of the opinion states only the views of the author. Judge Bosson's opinion, joined by Judge Wechsler, represents the opinion of the Court regarding the law governing the award of attorney's fees for efforts in recovering future medical benefits.

(12) To begin with, I address at greater length Worker's contention that the knee surgery is not a future medical benefit. In ordinary discourse there would be no doubt that the benefit to be received by Worker fits within the meaning of "future medical benefits." Courts adopt the natural, common meaning of language in a statute unless a statutory definition controls or the context suggests a special or technical meaning. *See Levario v. Ysidro Villareal Labor Agency,* 120 N.M. 734, 736, 906 P.2d 266, 268 (Ct.App. 1995). Nothing suggests a meaning that would aid Worker here. On the contrary, in the context of litigation the term "future" medical expenses or benefits refers to expenses or benefits to be incurred or received after trial. When the New Mexico Medical Malpractice Act refers to "future" medical benefits, it is undoubtedly referring to benefits that the patient will need after trial. *See* NMSA 1978, § 41–5–7(A) (Repl.Pamp.1996). In a typical workers' compensation case the worker proves the medical expenses that have been incurred up to the time of the hearing before the WCA. If the worker prevails, the WCJ orders the employer to pay for those benefits. No award is made for medical expenses that may be incurred in the future, *see Board of Educ. of Espanola Mun. Sch. v. Quintana,* 102 N.M. 433, 435, 697 P.2d 116, 118 (1985), in part because the Workers' Compensation Act itself requires the employer to furnish continuing medical care as needed, *id.;* NMSA 1978, § 52–1–49 (Repl.Pamp.1991).

(13) I am not persuaded by Worker's suggestion that the restriction on consideration of future medical expenses applies only to "speculative" future expenses. She relies on *Quintana*, which contains the following passage:

> We recognize that medical expenses are compensation for purposes of awarding attorney fees.... Such expenses, however, are those that *have already occurred*, not expenses that *might occur* in the future. A trial court is prohibited from making a present compensation award for future medical expenses due to their speculative nature. *Hales v. Van Cleave*, 78 N.M. 181, 429 P.2d 379 (Ct.App.), *cert. denied*, 78 N.M. 198, 429 P.2d 657 (1967). (Citation omitted).

102 N.M. at 435, 697 P.2d at 118.

(14) There are two flaws in Worker's argument. First, it reads too much into the word "speculative." Courts commonly use the term "speculative" to mean "unlikely" or "arrived at merely by guesswork," as when courts refuse to permit recovery for "speculative" damages. *See Camino Sin Pasada Neighborhood Ass'n v. Rockstroh*, 119 N.M. 212, 216, 889 P.2d 247, 251 (Ct.App.1994). That meaning, however, was certainly not the meaning intended in *Quintana*. The case relied upon by *Quintana* for the proposition that awards for future medical expenses are prohibited "due to their speculative nature" was *Hales*. In *Hales* both medical experts testified, and the court so found, that the worker would probably need an arthoplastic operation on his left hip in the future, and one of the experts testified to the probable cost of the procedure. 78 N.M. at 185–86, 429 P.2d at 383–84. In ordinary tort litigation those future medical expenses would not have been considered speculative and would have been recoverable. Yet *Hales* held that a compensation award for the expenses was not permitted. In *Quintana* itself the court included no description of the future medical expenses under consideration; apparently such details were irrelevant because all future medical expenses are sufficiently uncertain to be "speculative" within the meaning of the word as the court was using it.

(15) It would be remarkable if *Quintana* meant that the propriety of an award of future medical benefits would depend upon the certainty with which medical experts testified that the future benefits would be necessary. Typically, medical experts speak in terms of "reasonable medical probability," but in light of the decision in *Hales*, approved in *Quintana*, the *probability* of future need would not suffice to justify an award. I seriously doubt that *Quintana* was suggesting that a future medical benefit could be awarded if an expert testified to more than just a 51–percent probability—say, a 90–percent probability—of need for the benefit. In any event, turning to the present case, one can hardly say that *Quintana* would include the artificial knee replacement surgery for Worker in the group of non-speculative future medical benefits. Not only does the record reflect the doubt of experts regarding the propriety of the operation, but also Worker's failure to proceed with the operation by the time this appeal was filed (almost a year after Appellants agreed to pay for the operation) raises questions whether the operation would ever be performed.

(16) The second flaw in Workers' argument is more fundamental. *Quintana* was decided before the enactment of the statutory provision specifically forbidding consideration of "future medical benefits" in awarding attorney's fees. (Section 52–1–54(H) was enacted in its original form in 1987. *See* 1987 N.M. Laws, ch. 235, § 24.) Courts are bound by the language of the statute, not the language of *Quintana*. The statutory language contains no modifier of "future," such as "uncertain" or "speculative." It would be a distortion of the English language to read such a modifier into the words of the statute. Thus, in *County of Bernalillo v. Sisneros*, 119 N.M. 98, 101 n. 1, 888 P.2d 980, 983 n. 1 (Ct.App.1994), the Court stated that future medical benefits could not be considered in setting the attorney's fee even though the benefit in that case was a $2500 lump sum payment to cover future medical payments, as unspeculative an amount as one could imagine.

(17) Perhaps if the legislature had considered the special circumstances of this case—

in which the only claim for benefits is for future medical benefits—it may have decided that an award of attorney's fees would be appropriate if the worker was successful in the claim. But this Court's recent decisions have made it abundantly clear that only in extreme circumstances can assumptions about the preferences of the legislature override unambiguous statutory language. In *Pena v. Phelps Dodge Chino Mines*, 119 N.M. 735, 895 P.2d 257 (Ct.App.1995), the worker lied about his medical condition in his employment application and preemployment medical questionnaire. Under NMSA 1978, Section 52–1–28.3(A) (Repl.Pamp.1991) of the Workers' Compensation Act these lies would have deprived Worker of the compensation benefits he sought if "the employer [had] clearly and conspicuously disclose[d] that the worker shall be entitled to no future compensation benefits if he knowingly and willfully conceals or makes a false representation about the information requested." Section 52–1–28.3(B). The application and questionnaire, however, contained only the following warning: "I understand that any falsified information, misrepresentations or omissions may disqualify me from further consideration for employment or may result in dismissal if discovered at a later date." 119 N.M. at 737, 895 P.2d at 259. This Court held that this warning did not satisfy the statutory requirement. Reversing the denial of benefits by the workers' compensation judge, the Court wrote:

> The statute is explicit and unambiguous in the disclosure required. If the legislature had considered the matter, it may well have determined that a warning of loss of employment or perhaps a warning of possible criminal sanctions would be adequate. For whatever reasons, however, the legislature did not include such alternatives in the statute.

*Id.* at 738, 895 P.2d at 260.

(18) In *Ortiz v. BTU Block & Concrete Co.*, 122 N.M. 381, 925 P.2d 1 (Ct.App.1996), shortly after the compensable accident the worker was fired for repeated misconduct. She had not complained of the injury prior to her firing. *Id.* at 381, 925 P.2d at 1. Before reaching maximum medical improvement she was released to work by her physician, she was capable of modified duty with the employer, and such modified duty would have been available to her if she had not been fired for misconduct. *Id.* at 382, 925 P.2d at 2. The employer contended that in these circumstances NMSA 1978, Section 52–1–25.1 (Repl.Pamp.1991) provided that she was entitled to only two-thirds of the difference between her pre-injury wage and the wage she would have been paid for her modified duty. 122 N.M. at 382, 925 P.2d at 2. This Court disagreed and reversed the workers' compensation judge, because the statute permitted this reduction in temporary total disability benefits only if the employer "offered" employment to the worker after she was released to work. *Id.* at 382, 925 P.2d at 2. The Court wrote:

> We recognize that this Court has noted "the general acceptance of the proposition that one should not be permitted to benefit by refusing to take reasonable steps to help oneself." One might reason by analogy that a worker should not be entitled to greater benefit simply because she violated instructions so often that she was fired. But the above-quoted proposition is not a free-floating legal rule to be applied whenever a court wishes. It is only an aid in interpreting statutory language....
>
> ....
>
> ... It is not enough to say that the legislature would likely have included an exception for the situation before us on this appeal if it had considered the matter. Policy arguments may assist us in understanding statutory language, but they cannot substitute for the legislative text. (Citation omitted).

*Id.* at 383, 925 P.2d at 3. Likewise, here, the statutory language cannot reasonably be construed to permit consideration of Worker's future medical benefits in awarding a fee to her attorney.

(19) To avoid the prospect of Worker's attorney being unpaid for her efforts, the other members of the panel adopt a creative interpretation of Section 52–1–54(H) that was not argued in Worker's briefs. They contend that the language in that subsection was not intended to forbid an award of attorney's

fees, but rather the legislature was simply restricting the WCJs from considering the *value* of future medical benefits in making the award. I find that contention unpersuasive. ·

(20) The history of the present provision is instructive. When Section 52–1–54(H) was first enacted in 1986, the language was essentially the same as it is now:

> In awarding reasonable attorneys' fees, the hearing officer shall consider only those benefits to the workman that the attorney is responsible for securing. The value of future medical benefits awarded shall not be considered in determining attorneys' fees.

NMSA Section 52–1–54(B) (Cum.Supp.1986). At that time, however, Section 52–1–54(A) set forth a sliding scale for attorney's fees: no more than twenty percent of the first $5000 of benefits secured, fifteen percent of the next $5000 of benefits secured, and ten percent of the remaining benefits secured. Hence, if the only benefits obtained were future medical benefits, and the value of those benefits could not be considered, then the maximum attorney's fee would have been twenty percent of $0, which is $0.

(21) More recent versions of the Workers' Compensation Act have eliminated the sliding scale. Rather than tying the attorney's fee award directly to the monetary value of the benefits awarded, successor statutes have required simply the award of a reasonable attorney's fee, subject to a $12,500 statutory cap. *See* § 52–1–54(I). This provides flexibility to the WCJ, who can award a higher percentage of the benefits as an attorney's fee, depending on such circumstances as the difficulty of the case and the quality of the attorney's efforts. But nothing suggests that this flexibility, which had existed before enactment of the Interim Act in 1986, was suddenly to encompass permitting an award for obtaining a valueless benefit.

(22) On the contrary, even though the sliding-scale fee schedule has been eliminated, the statute still requires the receipt of a valuable benefit for attorney's fees to be awarded. Under Section .52–1–54(E) the WCJ awarding a fee is to consider (1) the employer's settlement offers, (2) "the present value of the award made in the worker's favor," and (3) the good faith of the parties in the conduct of informal claim resolution. The statute reflects the. longstanding rule that attorneys representing workers in workers' compensation cases are paid to win. If they don't win, they are paid nothing. Success is the sine qua non of an attorney's fee award, and the extent of that success is a determining factor in fixing the award. *See Fryar v. Johnsen,* 93 N.M. 485, 487, 601 P.2d 718, 720 (1979); *see also Farrar v. Hobby,* 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (attorney not entitled to fee award when plaintiff obtained only nominal judgment of $1); *see generally Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986).

(23) The majority suggests that the legislature intended to permit an attorney's fee award for· obtaining future medical benefits but eliminated consideration of the value of future medical benefits in an effort "[t]o save money." I am unconvinced, for several reasons. To begin with, the suggestion is contrary to what has apparently always been the practice in this state—not awarding attorney's fees for obtaining future medical benefits. In that context, one would expect at least a hint from the legislature that it intended to change the law. It is worth noting that the language requiring the tribunal setting the attorney's fee to consider the "present value of the award made in the [worker's] favor" was also in the workers' compensation statute when our Supreme Court ruled in *Quintana,* 102 N.M. at 435, 697 P.2d at 118, that future medical expenses should not be considered in awarding attorney's fees. Moreover, the statutory language forbidding consideration of the value of future medical benefits has been essentially unchanged since it was enacted by the Interim Act in 1986, *see* 1986 N.M. Laws, ch. 22, § 18, when, because of the sliding scale for attorney's fees, it was undisputable that no fee could be earned for obtaining future medical benefits. If the legislature were specifically interested in permitting fee awards for obtaining future medical benefits, one would expect a change

in the statutory language specifically addressing fee awards for such benefits.

(24) In addition, even if one were to assume that the legislature had decided to permit fee awards for obtaining future medical benefits, nothing in the statute suggests that the legislature thought that it could keep attorney's fees down by forbidding consideration of the value of such benefits in awarding the fee. Such a thought would be an ill-founded one. The prospect of enormous fees is precluded by the statutory fee cap of $12,500 per injury claim. *See* § 52–1–54(I). The problem of excessive legal fees is most likely to arise instead from overworking minor claims. Yet that is precisely what the majority's decision will encourage. If the extent of the worker's success (the *value* of the benefit) cannot be considered in fixing the award, then fifty hours of legal work to obtain treatment of a hangnail should be compensated the same as fifty hours of legal work to obtain treatment of an aneurysm—perhaps more, because of the novelty of the issue and the difficulty of the task of persuasion. The majority's decision provides perverse incentives to litigate future medical care. Attorneys can expect compensation at a prime hourly rate (Worker's attorney was awarded more than $167 per hour) without concern about whether the effort would be worthwhile in the real world, in which attorneys generally do not work on a case if their efforts are not expected to be cost effective. (How often do lawyers represent people claiming $3000 in damages from medical malpractice?) More of the premium dollar for workers' compensation insurance will be devoted to attorney's fees, and less to benefits for workers.

(25) To sum up, the clear import of Section 52–1–54(H) is that future medical benefits are to be considered valueless, so that no attorney's fee can be awarded for obtaining such a benefit. I can conceive of no reason for the legislature to permit an award of attorney's fees for recovering benefits of all types under the Workers' Compensation Act but to forbid consideration of the value of the benefit only when the benefit is future medical care. As indicated before, surely it would make a difference whether the future medical benefit was open heart surgery or treatment of an infected finger.

(26) Having said the above, I should add that I have concerns about the denial of an attorney's fee for the efforts to obtain future medical benefits for Worker. From what was said at oral argument, it appears that Worker's attorney performed a useful service. Nevertheless, concern for compensating her does not justify distorting statutory language, particularly when the distortion is likely to cause serious systemic problems that can only hurt workers as a group in the long run. The proper approach is to construe the statute as written and then determine (when the issue is properly raised) whether the limitation on attorney's fees violates constitutional protections by restricting the ability of workers to obtain needed legal advice. *See Mieras v. Dyncorp,* 122 N.M. 401, 411, 413–14, 925 P.2d 518, 528, 530–31 (Ct.App.1996) (Hartz, J., specially concurring). (Alternatively, as is true of so much of the Workers' Compensation Act, the language of Section 52–1–54 could benefit from a second look by the legislature.)

(27) But that is not the approach of the majority. Given their decision, I would add one caution. At oral argument, representatives of the WCA stated that WCA ombudsmen are available to assist workers with concerns such as those of Worker in this case. If so, such availability is a relevant factor in determining whether, and to what extent, the efforts of Worker's attorney were reasonable. The Workers' Compensation Act does not contemplate attorney involvement in disputes concerning future medical care. If attorney involvement is not essential—because of the ready availability of an effective administrative mechanism—what is reasonable may be no more than a quite limited role for an attorney. On the other hand, the WCJ should not presume that an attorney was unnecessary because of the theoretical availability of an ombudsman. The ombudsman program may be seriously flawed, as alleged by Worker's attorney at oral argument. The best way for the WCA to reduce the need for attorney's fees in these cases is to make attorneys unneces-

sary, by maintaining an effective, readily accessible ombudsman program.

## III. CONCLUSION

(28) For the above reasons, we set aside the WCJ's award of attorney's fees and remand for further proceedings. The WCJ should also consider the appropriateness of an award of attorney's fees for efforts by Worker's attorney on this appeal.

(29) **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur in part.

BOSSON, Judge (specially concurring).

30. We concur in the opinion of Chief Judge Hartz with respect to the discussion and holding of issue II(A) "Past–Due Disability Benefits." We do not agree with the discussion thereafter regarding issue II(B) "Medical Benefits." The following represents the opinion of the Court, and shall hereafter be cited as such, concerning an award of attorneys' fees for securing future medical benefits pursuant to NMSA 1978, Section 52–1–54(H) (1993).

■ 31. The workers' compensation judge (WCJ) awarded attorneys' fees of $4000 plus tax and costs. In explaining the award, the WCJ indicated the number of hours Worker's attorney had "reasonably and necessarily expended" (23.9) and the attorney's regular hourly billing rate ($140 per hour). The WCJ indicated that the issues were contested to an average degree; they were of average complexity and novelty; and the WCJ further noted the attorney's excellent reputation and the relative degree of success in this case. An award based solely upon the hours expended at the attorney's normal billing rate would equal approximately $3360. Yet the WCJ awarded a fee of $4000, approximately $640 more. Apparently, the WCJ justified this differential by calculating the present value of the future medical benefits Worker had been awarded ($25,000). Employer claims that any award of attorneys' fees to secure future medical benefits is in error. To the extent the WCJ based his award in this case upon the present value of future medical benefits, we

agree. However, a WCJ may base an attorneys' fee award on other factors as discussed hereinafter, and, if so, an award for securing future medical benefits is not provided by the Act. Because the record is unclear, we reverse and remand on this issue for further consideration of an appropriate attorney's fee award.

■ 32. NMSA 1978, Section 52–1–54(H) (1993) governs attorneys' fees for recovery of future medical benefits stating:

> In determining reasonable attorneys' fees for a claimant, the workers' compensation judge shall consider only those benefits to the worker that the attorney is responsible for securing. The value of future medical benefits shall not be considered in determining attorneys' fees.

This statute quite clearly prohibits an attorneys' fee calculated upon "the value of future medical benefits." It has been quite clear for some time that, however attorneys' fees are calculated in workers' compensation cases, they may not be determined based upon a percentage of the value of future medical benefits. *See Board of Educ. v. Quintana,* 102 N.M. 433, 435, 697 P.2d 116, 118 (1985); *County of Bernalillo v. Sisneros,* 119 N.M. 98, 103, 888 P.2d 980, 985 (Ct.App. 1994).

33. Worker suggests that this prohibition applies only when the award of future medical benefits is uncertain or speculative in amount, as indeed it oftentimes is. Worker relies on certain language in *Quintana* which notes the speculative nature of future medical costs in workers' compensation cases. Worker would have us contrast *Quintana* with the present case in which, she claims, both the cost and the likelihood of the future medical procedure is susceptible of more precise calculation. 102 N.M. at 435, 697 P.2d at 118. We disagree with Worker on this point and suggest that Worker misperceives the reason that attorneys' fees may not be premised upon the value of future medical benefits.

34. The uncertainty of a future medical award may be one factor. However, we believe the cases and the statutory history reflect a more fundamental opposition to calcu-

lating an attorney's fee based upon the value of future medical benefits. The reason has more to do with limiting the size of fee awards, especially when future medical benefits usually follow as a matter of course without a need for substantial attorney effort focussed on that issue alone. *See id.; Sisneros*, 119 N.M. at 103, 888 P.2d at 985. Therefore, we reject any claim that Worker is entitled to attorneys' fees based upon the present value of future medical benefits.

■ 35. On the other hand, Employer suggests that Worker can never recover *any* attorneys' fees, no matter how calculated, when incurred in obtaining future medical benefits. The answer to Employer's proposition is that the statute on its face does not prohibit an award of attorneys' fees for securing future medical benefits; it only stipulates that "[t]he *value* of future medical benefits shall not be considered in determining attorneys' fees." Section 52–1–54(H) (emphasis added). This means no percentage contingency fee premised upon the "value" of future medical benefits. Why would the legislature make such a choice? To save money. As in the case before us, the value of future medical benefits may well be a sizable figure, and an attorneys' fee based upon a percentage of that amount would likely be large as well. The legislature is entitled to exclude that method of computing attorneys' fees. But this is not to say that the legislature expected attorneys to work for free, even while successfully gaining future medical benefits for their clients over employer opposition, as in this case. There are other ways for the WCJ to calculate an award which have been exhaustibly discussed in other opinions of our courts. *See, e.g., Fryar v. Johnsen*, 93 N.M. 485, 601 P.2d 718 (1979) (*Fryar I* ). In our view, this means the WCJ may calculate a reasonable award of attorneys' fees for procuring future medical benefits as long as that calculation is based upon reasonable factors, such as those set forth in *Fryar I*, 93 N.M. at 487, 601 P.2d at 720, but which do *not* include a percentage of "the value" of those future medical benefits.

36. Our reading of Section 52–1–54(H) is consistent with the way attorneys' fees in workers' compensation cases have always been calculated. Perhaps as early as the first Workers' Compensation Act (the Act) in 1929, but surely beginning at least forty years ago, the legislature delegated the task of calculating attorneys' fees to the appropriate adjudicative authority, first to the district court, later to a hearing officer, and then to a WCJ, according to a broad discretionary standard of reasonableness. *See* 1929 N.M. Laws, ch. 113, § 22; 1955 N.M. Laws, ch. 274, § 1. Starting in 1959, the legislature began to narrow judicial discretion to award attorneys' fees by stipulating that the court must consider: (1) prior attempts at settlement and the amount, if any, the attorney improved the worker's case by litigation, and (2) "the present value of the award made in the work[er's] favor." 1959 N.M. Laws, ch. 67, § 28. Because attorneys' fees were only awarded for collecting "compensation through court proceedings," this Court initially held that attorneys were entitled to no award of fees for securing medical benefits, whether retroactive or prospective. *See Wuenschel v. New Mexico Broad. Corp.*, 84 N.M. 109, 111, 500 P.2d 194, 196 (Ct.App. 1972). We were in error. The Supreme Court subsequently reversed this Court and adopted a broader view of that same language in the Act, concluding that "medical expenses are compensation for the purpose of allowing attorney fees under [the Act]." *Schiller v. Southwest Air Rangers, Inc.*, 87 N.M. 476, 478, 535 P.2d 1327, 1329 (1975).

37. Subsequently, our Supreme Court in *Fryar I*, 93 N.M. at 487, 601 P.2d at 720, codified a series of supplemental factors that went beyond the language of the Act. The so-called *Fryar* factors are used still today to calculate the true value of the attorney's effort to the worker in light of a public policy concerned about balancing the need to curb the expense of unnecessary litigation against the chilling effect of miserly attorneys' fees on justice to the worker. *See Woodson v. Phillips Petroleum Co.*, 102 N.M. 333, 336–38, 695 P.2d 483, 486–88 (1985). Following *Fryar I*, this Court again tried unsuccessfully to narrow the discretion of the judge in calculating a fair attorneys' fee award by prohibiting the use of a percentage contingency fee even as a guide to determine a fair fee. *See Johnsen v. Fryar*, 96 N.M. 323,

328–29, 630 P.2d 275, 280–81 (Ct.App.1980) (*Fryar II* ). We concluded erroneously that "a fee based on a percentage of the award is not authorized either by § 54–1–54(D), . . . or by the additional factors listed in *Fryar v. Johnsen.*" *Fryar II*, 96 N.M. at 328, 630 P.2d at 280. The Supreme Court eventually overturned the *Fryar II* decision and made clear that there was nothing in the Act or in *Fryar I* that prohibited a court from utilizing a percentage of total recovery as one of several methods of arriving at a fair fee. *See Woodson*, 102 N.M. at 338, 695 P.2d at 488. Indeed, in *Quintana*, the Supreme Court noted that the Act continued to require the trial judge to take into consideration " '[t]he present value of the award made in the work[er's] favor." ' 102 N.M. at 435, 697 P.2d at 118 (quoting Section 52–1–54(D)(2)). We think our Supreme Court made clear in *Quintana* that, along with all the other *Fryar* factors, a court must consider, as a rule of reasonableness or proportionality, how a percentage of total recovery (excluding the value of future medical benefits) compares with other methods of determining a reasonable fee. *Quintana*, 102 N.M. at 435, 697 P.2d at 118.

38. In its first wholesale modification of the Workers' Compensation Act in 1986, the legislature stipulated that a fair attorneys' fee could not exceed a sliding scale based on a percentage of recovery which was "twenty percent of the first five thousand dollars ($5000) of the benefits secured, fifteen percent of the next five thousand dollars ($5000) of the benefits secured and ten percent of the remaining benefits secured." 1986 N.M. Laws, ch. 22, § 18. In the next subsection, the Act stipulated, for the first time and in language identical to the present Act, that "[t]he value of future medical benefits awarded shall not be considered in determining attorneys' fees." *Id.* The clear legislative intent was: (1) to establish a cap based on a percentage, and (2) to ensure that the value of future medical benefits was not included in that calculation. The net effect was to keep attorneys' fees lower. Except for the notion of a cap on fees, this was nothing new. Fees could still be calculated based on the *Fryar I* factors subject to the cap. In 1987 that cap was changed to a flat fee ($12,500). *See* 1987

N.M. Laws, ch. 235, § 24. As in the prior Act, the judge was still to consider "the present value of the award made in the worker's favor" in determining a reasonable fee, and that "present value" was not to include the "value of future medical benefits." *Id.* This remains the law today. *See* § 52–1–54(D)(2), –54(A), –54(H).

39. In sum, the WCJ is to use both the language of the Act and the various *Fryar I* factors in calculating a reasonable attorneys' fee, no different from how judges have determined fees for the past twenty years since *Fryar I*, except of course for the cap. One factor among several is a rule of proportionality based on a percentage of total recovery, somewhere between ten percent and twenty percent. *See Woodson*, 102 N.M. at 338, 695 P.2d at 488; *Quintana*, 102 N.M. at 434–35, 697 P.2d at 117–18; *Sisneros*, 119 N.M. at 103, 888 P.2d at 985. Total recovery for that proportionality computation does not include the value of future medical benefits, just as it never has. The WCJ is not precluded from calculating a fee based upon the mosaic of considerations that make up the *Fryar I* factors. We see nothing in the Act or in its history to suggest a different result.

40. We note that any award of attorneys' fees is always subject to a determination of reasonableness by the WCJ, and we are confident this will prevent any overreaching at the expense of employers. In the great majority of cases, an award of future medical benefits follows as a matter of course, and there should be no need for a separate award of attorneys' fees for time spent solely on this matter. In the rare exception, such as the case before us, the WCJ may exercise his discretion according to permissible criteria and determine a fair award without violating Section 52–1–54(H). Accordingly, we remand to the WCJ for a reconsideration of the attorney's fees question, along with appropriate findings, which would include a fair and reasonable fee for services expended by Worker's attorney on appeal.

WECHSLER, J., concurs.