1999-NMCA-139

992 P.2d 304

**Ernest GARCIA, Worker–Appellee,**

v.

**GENERAL ELECTRIC and Electric Mutual Insurance Company, Employer/Insurer–Appellants.**

**No. 19,856.**

Court of Appeals of New Mexico.

Sept. 15, 1999.

Certiorari Denied, No. 25,987, Nov. 12, 1999.

David S. Proffit, Albuquerque, for Appellee.

Kelly A. Genova, Albuquerque, for Appellants.

## OPINION

PICKARD, Chief Judge.

{1} Ernest Garcia (Worker) suffered a hip injury in a work-related accident for which General Electric (Employer) paid medical costs and disability payments. Worker recovered damages against a third-party tortfeasor after a jury trial, but the jury apportioned the comparative negligence of Worker at 60% and that of PJ Albuquerque, Inc. (Defendant) at 40%. The Workers' Compensation Judge (WCJ) applied the formula from *Gutierrez v. City of Albuquerque*, 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807, to determine what portion of the jury award Worker must use to reimburse Employer. Employer and Electric Mutual Insurance (Insurer) appeal the decision of the WCJ, arguing that the WCJ incorrectly determined their reimbursement rights. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} The parties stipulated to the facts of this case. Worker was injured on the premises of Defendant. He received temporary total disability benefits for 53 weeks and permanent partial disability benefits for 185 weeks. Employer paid Worker's medical expenses in full. Worker attained maximum medical improvement on June 6, 1994, and has not been released to return to work. The hip injury is a 15% injury that constitutes a 25% permanent partial disability.

{3} Worker filed a tort claim against Defendant, and the district court permitted Insurer to intervene. After trial, the jury entered a special verdict in favor of Worker, awarding Worker $41,362.87 in damages for medical expenses, $321,246.00 for lost wages

and earning capacity, and $60,000 for "other" damages. The jury also found that Worker was 60% negligent and Defendant was 40% negligent. After reduction for Worker's negligence, Worker's recovery totaled $181,043.55. Defendant paid Worker's award and costs, and Worker paid his attorney a one-third contingency, or $60,347.85, in fees.

{4} Employer and Insurer presented their case for reimbursement to the WCJ. The WCJ applied the analysis developed by the Supreme Court in *Gutierrez* to determine that Employer and Insurer were entitled to reimbursement out of Worker's third-party recovery in the amount of $5,145.32, and that Worker was entitled to have Employer and Insurer pay his reasonable future medical expenses. The $5,145.32 figure represents the amount of Employer's share of the tort recovery based on the *Gutierrez* formula ($36,820.19) less certain offsets. The offsets included (1) Employer's share of the attorney fees paid and (2) the present value of future disability benefits, which Employer and Insurer were relieved of paying. Employer and Insurer appeal.

## DISCUSSION

{5} Employer and Insurer propound several arguments. Their threshold argument is that the Supreme Court's recent treatment of the issue of reimbursement in the workers' compensation context is inapplicable in this case. *See Gutierrez,* 1998–NMSC–027, 125 N.M. 643, 964 P.2d 807. Because the parties stipulated to the facts, we review the legal question of whether *Gutierrez* is the applicable law of the case de novo. *See Gallegos v. State of N.M. Bd. of Educ.,* 1997–NMCA–040, ¶ 11, 123 N.M. 362, 940 P.2d 468 (appellate court reviews de novo questions of law decided by trial court). We address Employer's and Insurer's arguments in turn, combining the first two for the purpose of streamlining our discussion.

*Applicability of Gutierrez*

■ {6} Employer and Insurer first argue that the "application of [*Gutierrez*] in this case is misplaced, because it is factually and legally inappropriate." Their subsequent argument, that Worker was made whole by his third-party recovery, speaks to the same issue, allowing us to address both issues in this section. The premise of this argument is that because this case involved a jury verdict for Worker in the third-party suit that was reduced for Worker's negligence, as opposed to the settlement of the third-party action for significantly less than the damages found by the WCJ as in *Gutierrez,* the *Gutierrez* case is inapposite. We disagree.

{7} The *Gutierrez* case offers an exhaustive treatment of the issue of how to allocate reimbursement to an employer or insurer when a worker receives damages from a third party. In *Gutierrez,* the worker fell over a pile of construction materials and suffered injury as a result. *See* 1998–NMSC–027, ¶ 2, 125 N.M. 643, 964 P.2d 807. She received workers' compensation disability and medical benefits from her employer. *See id.* She filed a workers' compensation claim contesting her entitlement and later filed a third-party negligence suit against the company that had left the material at the construction site. *See id.* Gutierrez ultimately settled her tort claim for $140,000, and the issue in that case became what portion of that settlement should be used to reimburse the employer for the benefits it paid, in light of the WCJ's finding that her actual damages totaled $367,609.13. *See id.* ¶ 3.

{8} The *Gutierrez* court devised a system of analysis for such reimbursement claims. In a nutshell, it held that the employer "is entitled to recoup the amount of a worker's duplicative recovery. Those monies a worker reasonably receives in tort to compensate for injuries not addressed by workers' compensation are beyond the reach of the employer." *Id.* ¶ 28. Employer and Insurer propose two main distinctions between the instant case and *Gutierrez* that they claim prevent the application of the *Gutierrez* formula in their case.

1. Jury Verdict

{9} Employer and Insurer claim that the factual distinction between the settlement in *Gutierrez* and the jury verdict in this case is legally significant. However, the language in *Gutierrez* is not so restricted as to preclude

the application of the analysis in that case to the jury award in this case. Rather, the Court noted that in determining whether the employer's contribution is duplicated by the tort recovery, the judge must determine "the actual amount of tort damages suffered, the elements of damage (including the amounts thereof), *the degree of the tortfeasor's fault,* and *the amount of the tort award* or good faith settlement." *Id.* ¶ 13 (emphasis added). This language suggests that, while a comparative negligence issue may not have been specifically before the Court, the same analysis would apply in such a situation.

■ {10} It is essential to an understanding of this case and *Gutierrez* to recognize that workers' compensation benefits are paid "without regard to fault. . . ." *Id.* ¶ 12. Thus, Employer's and Insurer's argument that they should not have to pay for Worker's negligence misses the mark. *Gutierrez* controls the issue in this case because that issue is duplication of recovery, not fault. *See id.* ¶ 10 (holding that an employer is only allowed to be reimbursed from a tort recovery to the extent that the "recovery duplicates the elements of damage covered by compensation benefits"). Fault is simply never an issue with ordinary workers' compensation cases. Therefore, whether fault is determined by a jury (as in this case) or left undiscovered (as in *Gutierrez*) is irrelevant to the issue of reimbursement.

2. Complete Recovery

{11} Employer and Insurer also argue that the *Gutierrez* analysis is inapplicable because it applies only to partial recovery as opposed to what they argue here is a complete recovery by Worker that was reduced only due to his own negligence. We fail to see the distinction between the outcome in this case and the outcome in *Gutierrez.* Gutierrez fell over construction materials left at a construction site. *See id.* ¶ 2. Her tort damages included all of her medical expenses that were covered by workers' compensation as well as other elements, some of which came under workers' compensation and some of which did not. *See id.* ¶ 3. Gutierrez, however, had settled the tort claim for $140,-000, which the WCJ found to be only 38% of

the actual damages that Gutierrez suffered. *See id.* Despite this fact, the settlement was viewed by the parties and the WCJ as a "reasonable compromise." *Id.* ¶ 2. Given this disparity between the settlement and the actual tort damages, and in light of the nature of the injury, it is a reasonable inference that Gutierrez, like Worker here, was partially at fault for the accident.

{12} In this case, Worker suffered a similar fall, and as a result of his own negligence received only 40% of his actual damages. We believe that this is an analogous situation to that in *Gutierrez,* and it calls for the application of that analysis. Employer and Insurer do not allege that the WCJ erred in its mathematical calculations based on the *Gutierrez* formulation.

*Reimbursement Based on Worker's Actual Tort Recovery*

■ {13} Employer and Insurer next contend that the WCJ erred by reducing the amount Worker was required to reimburse them by 60%, based on Worker's actual recovery after adjustment for his comparative negligence. It appears that this argument is essentially disagreement with the Court's holding in *Gutierrez.* Specifically, this argument is contrary to the reimbursement concept as articulated in *Gutierrez.* The purpose of reimbursement is to prevent a worker from receiving a windfall in the form of double compensation from the employer and from the third-party tortfeasor, not to assure full recovery to the employer. *See id.* ¶ 5. We are bound by this recent precedent. Because the WCJ faithfully applied the *Gutierrez* analysis, there was no error here.

*Future Medical Expenses*

■ {14} Employer and Insurer contend that the WCJ improperly included in his decision the conclusion that "Worker's right to future reasonable and necessary care is unaffected and should remain in force." The WCJ further concluded that "Worker is entitled to, and Employer/Insurer are obligated to provide reasonable and necessary medical care in the future." Regardless of the fact that Worker did not present evidence at trial

pertaining to future medical expenses, we hold that the grant of future medicals was within the authority of the WCJ.

{15} Under the Workers' Compensation Act, an employer is obligated to provide reasonably necessary health care services for "as long as medical or related treatment is reasonably necessary." NMSA 1978, § 52–1–49 (1987) (effective Jan. 1, 1991). Employer and Insurer argue that because the jury did not award future medical expenses it was improper for the WCJ to do so. However, this contention is groundless. While to receive a jury award for future medical expenses would require an evidentiary basis, *see McMains v. Aztec Well Service*, 119 N.M. 22, 24, 888 P.2d 468, 470 (Ct.App.1994), the Act specifically provides for such expenses. As this Court held in *Buckingham v. Health South Rehabilitation Hospital*, 1997–NMCA–127, ¶ 12, 124 N.M. 419, 952 P.2d 20, no award is made for medical expenses that may be incurred in the future "in part because the Workers' Compensation Act itself requires the employer to furnish continuing medical care as needed." *Id.* Because future medical expenses would be speculative, the employer pays them as a matter of course. *See St. Clair v. County of Grant*, 110 N.M. 543, 548, 797 P.2d 993, 998 (Ct.App.1990) (explaining that Section 52–1–49 is in place because "the trial court cannot practically determine the worker's future medical needs at the time of entry of a judgment finding disability"). The employer's obligation is limited by the requirement that treatment be reasonably necessary.

{16} Nor is Worker "relitigating" his medical damage claims before the WCJ, as Employer and Insurer contend. Worker did not litigate the future medical expense issue in the tort proceedings, and the workers' compensation statute permits him to do so later, should he incur further expenses. The burden remains on Worker to prove any medical expenses related to a work-related injury. *See Graham v. Presbyterian Hosp. Ctr.*, 104 N.M. 490, 492, 723 P.2d 259, 261 (Ct.App.1986). To the extent that Insurer is complaining that Worker failed to raise the future medical expenses issue at the tort trial, we are unsympathetic. As an interve-

nor, Insurer was a party to the action against Defendant and could have litigated this issue in its own interest. *See* Rule 1–024 NMRA 1999; *see generally Richins v. Mayfield*, 85 N.M. 578, 580, 514 P.2d 854, 856 (1973). The WCJ, therefore, appropriately placed the obligation of payment on Employer and Insurer, in accordance with Section 52–1–49.

## CONCLUSION

{17} We affirm.

{18} Worker requests that we award reasonable attorney fees for the work done in connection with the appeal. Considering the fees obtained in the tort case, the admonition in the calendar notice, and the nature of Worker's brief, we hereby award $1,000.00 for the services of counsel on appeal.

{19} **IT IS SO ORDERED.**

ALARID and APODACA, JJ., concur.