2005-NMCA-123

122 P.3d 839

Rafael MEDINA, Worker–
Appellant/Cross–
Appellee,

v.

HUNEMULLER CONSTRUCTION, INC.,
and Hospital Services Corporation, Employer/Insurer–Appellees/Cross–Appellants.

No. 23,819.

Court of Appeals of New Mexico.

Aug. 11, 2005.

Victor S. Lopez, Albuquerque, NM, for Worker–Appellant/Cross–Appellee.

Max J. Madrid, Susan Bisong, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, NM, for Employer/Insurer–Appellees/Cross–Appellants.

## OPINION

ALARID, Judge.

{1} The principal issue presented by this case is whether an employer who mistakenly notifies the Workers' Compensation Administration (WCA) of its acceptance of a mediator's recommended resolution may obtain

relief from the binding effect of the recommended resolution pursuant to NMSA 1978, Section 52–5–9(B)(2) (1986, as amended through 1989). We hold that an employer may not resort to Section 52–5–9(B)(2) and that NMSA 1978, Section 52–5–5(C) (1986, as amended through 1993) provides the exclusive procedure for obtaining relief from the binding effect of an accepted recommended resolution on the grounds of mistake.

{2} On June 26, 2001, Rafael Medina (Worker) filed a complaint with the WCA. The complaint recited that Worker had been injured when a board was flipped up, striking Worker and causing severe injuries. The complaint stated that Worker's average wage was "$11.00 per hour at 40 hours per week plus overtime" and that Worker's weekly compensation rate was "$440.00." The employer, Hunemuller Construction, Inc., and its insurer, Hospital Services Corp. (hereafter collectively referred to as Employer), filed a response through their attorney asserting that "Worker has been, and is being paid, all indemnity benefits for which he's entitled."

{3} A mediation conference was held on September 27, 2001. A Recommended Resolution was issued on October 19, 2001. The Recommended Resolution contained the following finding, which is the focus of this appeal: "At the time of the accident Worker was earning $11.00 per hour and *his compensation rate is $440.00 per week.*" (Emphasis added). The Recommended Resolution advised the parties that "[a]ny party who fails to file the notice of acceptance or rejection of this Recommended Resolution with the Workers' Compensation Administration within thirty [ (]30) days of receipt will be bound by the Recommended Resolution at [sic] stated above."

{4} On November 1, 2001, Employer filed a notice stating that it accepted the Recommended Resolution. On November 6, 2001, Worker filed a notice accepting the Recommended Resolution. On January 22, 2002, the clerk of the WCA filed a Notice of Completion, reciting that "[t]he foregoing cause is now completed. The parties have resolved the issues. No further action is required in this cause at this time, and the Administration file shall be closed."

{5} On March 29, 2002, Employer filed an Application to Workers' Compensation Judge requesting a supplemental compensation order. In support of its application, Employer asserted that after it had agreed to the Recommended Resolution, it realized that the weekly compensation rate of $440.00 set out in the Recommended Resolution was substantially greater than the figure supported by Employer's records of Worker's earnings. According to Employer, Worker's average weekly wage was $369.95 and Worker was entitled to total temporary disability compensation at a rate of $246.63 per week.

{6} Worker filed a response arguing that NMSA 1978, Section 52–5–10 (1986, as amended through 1990) governs the issuance of supplemental compensation orders, and that the procedure contemplated by Section 52–5–10 was available to workers as a means of enforcing compensation orders, but was not available to an employer seeking to modify a recommended resolution. Worker asserted that Employer's Application was more properly characterized as a request to modify the Recommended Resolution; that under our decision in *Norman v. Lockheed Eng'g & Science Co.,* 112 N.M. 618, 817 P.2d 1260 (Ct.App.1991), Employer was limited to the procedure provided by Section 52–5–5(C) in seeking modification of the Recommended Resolution on the ground of mistake; and, that Employer's Application was untimely under Section 52–5–5(C).

{7} The Workers' Compensation Judge (WCJ) issued a Memorandum Opinion on April 12, 2002. The WCJ treated Employer's application for a supplemental compensation order as a request for modification pursuant to Section 52–5–9. The WCJ concluded that *Norman* was distinguishable inasmuch as the employer in *Norman* had failed to respond to a recommended resolution, while Employer in the present case had affirmatively accepted the Recommended Resolution. The WCJ concluded that *Norman's* holding did not preclude Employer from seeking a modification of the Recommended Resolution pursuant to Section 52–5–9. Turning to the merits, the WCJ con-

cluded that "[c]onsidering the totality of the circumstances in this case, ... there was a mistake made in the calculation of the average weekly wage and resulting compensation rate." On May 8, 2002, the WCJ entered an order consistent with its Memorandum Opinion. The WCJ vacated the portion of the Recommended Resolution setting a weekly compensation rate of $440.00 and directed that a hearing should be set to determine an average weekly wage and compensation rate.

{8} On January 30, 2003, the WCJ entered a Compensation Order. The WCJ found that the October 19, 2001, Recommended Resolution "contained a material error as regards [to] the compensation rate for Worker." The WCJ concluded that "[m]istake exists in the Recommended Resolution of October 19, 2001, warranting relief under Section 52–5–9(B)(2) NMSA." The WCJ corrected the Recommended Resolution to provide for an average weekly wage of $346.66 and a weekly compensation rate of $243.11.

{9} On February 21, 2003, the WCJ entered an order settling attorney's fees. The WCJ awarded Worker's counsel $8,007.00 plus tax and directed that Worker and Employer should each pay one half of the attorney's fees.

{10} On February 25, 2003, Worker filed a notice of appeal from the January 30, 2003, Compensation Order and the February 21, 2003, order on attorney's fees. On March 20, 2003, Employer filed a notice of cross-appeal.

## DISCUSSION

### 1. Worker's Appeal

#### a. Merits

{11} This appeal turns upon the interplay of two statutes, Sections 52–5–5(C) and 52–5–9. In reviewing the WCA's application of these statutes to the present case, we apply the standards set out in *Chavez v. Mountain States Constr.*, 1996–NMSC–070, ¶¶ 21–25, 122 N.M. 579, 929 P.2d 971. We note that Worker does not attack the WCJ's finding that the Recommended Resolution as accepted by Employer mistakenly overstated the weekly compensation rate. The issue before us is the legal effect of that mistake.

Section 52–5–5(C) provides:

Upon receipt, every claim shall be evaluated by the director or his designee, who shall then contact all parties and attempt to informally resolve the dispute. Within sixty days after receipt of the claim, the director shall issue his recommendations for resolution and provide the parties with a copy by certified mail, return receipt requested. Within thirty days of receipt of the recommendation of the director, each party shall notify the director on a form provided by him of the acceptance or rejection of the recommendation. A party failing to notify the director waives any right to reject the recommendation and is bound conclusively by the director's recommendation unless, upon application made to the director within thirty days after the foregoing deadline, the director finds that the party's failure to notify was the result of excusable neglect. If either party makes a timely rejection of the director's recommendation, the claim shall be assigned to a workers' compensation judge for hearing.

Section 52–5–9 provides:

A. Compensation orders are reviewable subject to the conditions stated in this section upon application of any party in interest in accordance with the procedures relating to hearings. The workers' compensation judge, after a hearing, may issue a compensation order to terminate, continue, reinstate, increase, decrease or otherwise properly affect compensation benefits provided by the Workers' Compensation Act ... or in any other respect, consistent with [the Workers' Compensation Act], modify any previous decision, award or action.

B. A review may be obtained upon application of a party in interest filed with the director at any time within two years after the date of the last payment or the denial of benefits upon the following grounds:

. . . .

(2) mistake, inadvertence, surprise or excusable neglect[.]

{12} In *Armijo v. Save 'n Gain,* 108 N.M. 281, 286, 771 P.2d 989, 994 (Ct.App.1989), we held that a party who desires to set aside an acceptance of a recommended resolution

must apply to the WCA to set aside the acceptance within the same time limits set out in Section 52–5–5(C) for applying for leave to file a belated rejection. In *Armijo*, we upheld a denial of a worker's application to withdraw an acceptance because it was filed nine weeks after she had filed her acceptance of the recommended resolution. *Id.* *Armijo* establishes that an application to withdraw an acceptance pursuant to Section 52–5–5(C) is subject to the same deadline as an application for leave to file a belated rejection. *Id.* Under *Armijo*, Employer's March 29, 2002, Application was clearly untimely under Section 52–5–5(C). *Id.*

{13} In *Norman*, we considered the relationship between Section 52–5–5(C) and Section 52–5–9. 112 N.M. at 621, 817 P.2d at 1263. *Norman* involved an attempt by an employer to obtain review under Section 52–5–9 of a recommended resolution in response to which the employer had belatedly filed a notice of rejection outside the time limits of Section 52–5–5(C). *Norman*, 112 N.M. at 619, 817 P.2d at 1261. We held that a recommended resolution that has become conclusively binding by operation of Section 52–5–5(C) is a compensation order for purposes of Section 52–5–9. *Id.* at 621, 817 P.2d at 1263. However, we recognized that "allowing a party up to two years to assert mistake or excusable neglect as a basis for filing a rejection to the recommended resolution would make a nullity of the time limits in Section 52–5–5(C)." *Id.* at 622, 817 P.2d at 1264.

{14} We agree with the WCJ that the present case is distinguishable from *Norman* because Employer in the present case notified the WCA of its acceptance, whereas the employer in *Norman* became conclusively bound by operation of law due to its failure to respond within the time limit imposed by Section 52–5–5(C). However, in view of our holding in *Armijo*, applying the same time limits to applications to withdraw an acceptance, and applications to file a belated rejection, we conclude that *Norman* also should apply in the context of an untimely application to withdraw an acceptance where the party's acceptance is based on a mistake as to the correct weekly compensation rate. If we did not apply *Norman* in the present

context, the thirty-day deadline of Section 52–5–5(C) would be rendered a nullity in cases involving untimely applications to withdraw an acceptance based upon mistake. Under *Norman*, Section 52–5–9(B)(2) does not provide a basis for obtaining relief from a recommended resolution on the basis of mistake once the time limits of Section 52–5–5(C) governing withdrawal of an acceptance have expired. 112 N.M. at 622, 817 P.2d at 1264. We therefore vacate the January 30, 2003, Compensation Order, and remand with instructions to the WCJ to treat the Recommended Resolution as conclusively binding the parties.

### b. Attorney's Fees

{15} In determining Worker's attorney's fees, the WCJ based his award on the assumption that Worker was entitled to benefits measured by the January 30, 2003, Compensation Order, which relied on a weekly compensation rate of $243.11. Because our decision vacates the January 30, 2003, Compensation Order and reinstates the Recommended Resolution, which relies on a weekly compensation rate of $440.00, the amount of benefits recovered by Worker will increase substantially. On remand, the WCJ should take into account this substantial increase in the amount of benefits recovered by Worker. *See Fryar v. Johnsen*, 93 N.M. 485, 488, 601 P.2d 718, 721 (1979) (applying prior law; discussing factors to be considered in determining attorney's fees award to worker's counsel). Additionally, the WCJ appears to have declined to award any attorney's fees for work done by Worker's counsel in defending the Recommended Resolution. Since Worker is now the prevailing party on the issue of the binding effect of the Recommended Resolution, it is appropriate for the WCJ to consider the hours expended by Worker's counsel on that issue. *See id.* (noting relative success and time expended by attorney as an appropriate consideration in setting amount of fee).

{16} Worker raises two additional concerns, which we address, because they likely will arise on remand. Worker points out that attorney's fees are to be calculated using the "present value of the award." *See*

NMSA 1978, § 52–1–54(E)(2) (1987, as amended through 2003). Worker argues that since we are vacating the Compensation Order, reinstating the Recommended Resolution and remanding for recalculation of attorney's fees, the calculation of the present value of the award should reflect the value of medical benefits that Worker has received subsequent to the date of the now vacated February 21, 2003, order settling attorney's fees.

■ {17} By judicial decision and statute, New Mexico law distinguishes between past and future medical benefits for purposes of calculating attorney's fees in workers' compensation cases. The cost of medical services that have already occurred are included in calculating the present value of the award. *See Bd. of Educ. v. Quintana,* 102 N.M. 433, 435, 697 P.2d 116, 118 (1985) (applying prior law); *see also Buckingham v. Health South Rehab. Hosp.,* 1997–NMCA–127, ¶¶ 35–38, 124 N.M. 419, 952 P.2d 20 (Bosson, J., specially concurring, writing for two-judge majority on question of how future medical benefits fit into calculation of claimant's attorney's fees) (providing historical analysis of role under New Mexico workers' compensation law of past and future medical benefits in calculating claimant's attorney's fees). However, Section 52–1–54(H) provides that "[t]he value of future medical benefits shall not be considered in determining attorney fees."

■ {18} In *Davis v. Homestake Mining Co.,* we held that the present value of the award "means the value computed as of the date of the award to the workman." 105 N.M. 2, 5, 727 P.2d 941, 944 (Ct.App.1986). In the present case, the Recommended Resolution proposed that

Employer/Insurer are required to pay for continuing reasonable and necessary medical care for the work injury with the authorized health care provider. This includes treatment for dental treatment/replacement, and TMJ treatment as per the recommendations made by [the authorized health care provider].

{19} As discussed above, the Recommended Resolution became conclusively binding upon the parties upon the expiration of sixty days from the date the party received it. Applying *Davis,* we hold that medical benefits yet to be received as of that date constitute future medical benefits, and the value of those benefits may not be considered in determining attorney's fees even though the value of those benefits may be calculated with certainty at this point in time. 105 N.M. at 5, 727 P.2d at 944. However, under our decision in *Buckingham,* the *fact* that Worker was awarded future medical benefits may be considered in fixing an appropriate fee, even though the *value* of those benefits may not. 1997–NMCA–127, ¶ 35, 124 N.M. 419, 952 P.2d 20.

■ {20} Worker argues that his counsel's facility in Spanish should have been considered by the WCJ in determining attorney's fees. A worker's compensation judge exercises broad discretion in awarding attorney's fees. *See generally Cordova v. Taos Ski Valley, Inc.,* 1996–NMCA–009, 121 N.M. 258, 910 P.2d 334. We agree with Worker that facility in a non-English speaking claimant's own language can be a proper factor in awarding attorney's fees. *See Fryar,* 93 N.M. at 488, 601 P.2d at 721 (holding that attorney's ability, experience, and skill may be considered in fixing amount of attorney's fees). Worker's counsel bears the burden of providing evidentiary support for his assertion that his language ability actually facilitated his representation of Worker. *Id.* On remand, the WCJ should consider this factor upon a proper evidentiary showing by Worker's counsel. We emphasize that the WCJ has considerable discretion as to the weight it assigns to this factor. *Cordova,* 121 N.M. at 264, 910 P.2d at 340 (observing that "[f]ee calculation should not be reduced to a mechanical or formulaic process").

## 2. Employer's Cross–Appeal

{21} Employer has cross-appealed, arguing that it made an offer of judgment based on a weekly compensation rate of $246.63 and that this offer was greater than the amount awarded by the January 30, 2003, Compensation Order awarding a weekly compensation rate of $243.11. Employer argues that under Section 52–1–54(F), Worker should have

been required to bear one hundred per cent of the attorney's fees due to Worker's counsel. Our disposition of Worker's appeal in which we reinstated the Recommended Resolution with its weekly compensation rate of $440.00 has eliminated the factual predicate for Employer's argument: Employer's offer based on a weekly compensation rate of $246.63 was less than the amount that we have determined Worker should receive using the reinstated weekly compensation rate of $440.00. The fee-shifting mechanism of Section 52–1–54(F) therefore is unavailable to Employer.

## CONCLUSION

{22} We remand to the WCA with instructions to vacate the January 30, 2003, Compensation Order and to treat the Recommended Resolution as conclusively binding. On remand, the WCJ should reconsider the amount of attorney's fees to be awarded Worker's counsel. We affirm the WCJ's refusal to shift Employer's attorney's fees to Worker pursuant to Section 52–1–54(F). We award Worker's counsel attorney's fees for work on this appeal in an amount to be fixed by the WCJ on remand.

{23} **IT IS SO ORDERED.**

I CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge.

JAMES J. WECHSLER, Judge (dissenting).

WECHSLER, Judge (dissenting).

{24} I respectfully dissent from the majority's holding that the time limits of Section 52–5–5(C), rather than those of Section 52–5–9(B), apply to the withdrawal of an acceptance based on mistake.

{25} The recommended resolution in this case is the equivalent of a compensation order. *Norman*, 112 N.M. at 621, 817 P.2d at 1263. Section 52–5–9(B)(2) allows a two-year period for review of a compensation order on the basis of mistake. I agree with the special concurrence in *Armijo* that Section 52–5–5(C) "applies only to a situation where a party has failed to notify the director of acceptance or rejection of the recommendation." *Armijo*, 108 N.M. at 286, 771 P.2d at

994 (Apodaca, J., specially concurring). That section merely limits to thirty days the opportunity for a party conclusively bound by a recommended resolution due to the failure to notify the director of a response to a recommendation based on the parties' excusable neglect to provide the required notification. It does not apply to a mistake which forms the foundation for a compensation order. *Norman* only forecloses the use of Section 52–5–9(B) when the circumstances of a party failing to provide timely notification under Section 52–5–5(C) apply. *Norman*, 112 N.M. at 621–22, 817 P.2d at 1263–64. I do not agree that the failure to apply *Norman* in this case renders Section 52–5–5(C) a nullity because of the limited application of 52–5–5(C) to excusable neglect for failure to provide notification concerning acceptance or rejection of a recommended resolution.